Lindy La-Gail BELTON, Appellant,

v.

**BOARD OF POLICE COMMISSIONERS OF KANSAS CITY, Mo., et al., Respondents.**

No. 67225.

Supreme Court of Missouri, En Banc.

April 15, 1986.

Richard Helfand, Kansas City, for appellant.

Neal E. Millert, Robert M. Sommers, Kansas City, for respondents.

ROBERTSON, Judge.

Officer Lindy L. Belton of the Kansas City, Missouri Police Department (hereafter KCPD) appeals the entry of summary judgment against her in a suit for damages and for declaratory and injunctive relief against respondents, the Board of Police Commissioners of the City of Kansas City, Missouri, and Norman Caron, Chief of Police of the Kansas City, Missouri Police Department, following the imposition of a ten-day suspension from her duties. Appellant challenges the constitutionality of the suspension and review procedures under §§ 84.500 and 84.610, RSMo 1978, on the grounds that these provisions violate her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and article I, § 10 of the Missouri Constitution. The Court of Appeals, Western District, transferred the case to this Court prior to opinion. Mo. Const. art. V, § 11. We have jurisdiction pursuant to Mo. Const. art. V, § 3. The judgment of the trial court is affirmed.

## I.

Summary judgment may only be rendered when the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *Shepherd v. American States Insurance Co.*, 671 S.W.2d 777, 780 (Mo. banc 1984). A genuine issue of material fact exists whenever there is the slightest doubt regarding a fact with legal and probative force as to a controlling issue. *Id.* In reviewing a grant of summary judgment, an appellate court must view the record in the light most favorable to the party against whom summary judgment was rendered, to determine whether the requirements of Rule 74.04(c) have been met. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984).

The factual exposition which follows reflects these principles.

## A.

Appellant has served as a police officer with the KCPD since September, 1976. On October 30, 1981, appellant's son reported a burglary at appellant's home. While investigating the crime scene, KCPD officers discovered a plastic bag containing a green leafy substance believed to be marijuana, three or four "hash" pipes, and several black capsules, in and on an open dresser in appellant's ransacked bedroom. The vegetable matter and the pills were confiscated and sent to the Regional Criminalistics Laboratory for examination. The attendant lab report, received on November 10, 1981, revealed that the capsules were not a controlled substance, but that the leafy substance was marijuana.

On November 3, 1981, appellant's supervisor, Sgt. Richard James, and her Shift Commander, Capt. Marilyn Brauninger, informed appellant that some pills and what was believed to be marijuana, had been found in her bedroom and that depending upon the outcome of the laboratory analysis, an Internal Affairs investigation would probably be initiated. Appellant denied any knowledge of the materials discovered and offered to take a polygraph examination to clear up any suspicion that she possessed or used illegal drugs. She also noted that she had been undergoing harassment by an ex-boyfriend and speculated that he might have some involvement in the incident. Appellant was directed to prepare a memorandum detailing the harassment and her suspicions.

On November 16, 1981, following receipt of the lab report, Sgt. James initiated an incident report requesting an Internal Af-

fairs investigation to determine the extent of appellant's involvement with the marijuana found in her home. The incident report noted the results of the laboratory examination, and stated, *inter alia,* that, "on the surface, it would appear that PO Belton is in violation of Rule # 5, of the 'Rules of Conduct' which states, 'A member shall obey all municipal ordinances, state and federal laws.' " Appellant reviewed and signed this incident report. That same day, Capt. Brauninger informed appellant of the results of the lab tests, and told appellant that she too was recommending an Internal Affairs investigation of the incident. Capt. Brauninger prepared a memorandum to that effect, which was passed up the chain of command to Chief Caron who issued the order to investigate.

On November 16, 1981, appellant prepared two Inter-department Communications setting out her version of the incident. One memo was sent to Sgt. James, and the other to Capt. Brauninger. In these memos appellant asserted that she had no prior knowledge of the presence of marijuana in her home; that it did not belong to her; and that she had recently been undergoing harassment by a former boyfriend who may have planted the drugs in her home in an effort to get even with her.

During the course of its investigation, the Internal Affairs officers spoke with all persons having any information believed to be relevant to the investigation. Statements were obtained from the officers who had investigated the burglary at appellant's home; from appellant's live-in boy-friend; from appellant's son; and from the ex-boyfriend alleged to have been harassing appellant. The investigators also canvassed appellant's neighborhood to determine if any of the residents had information pertinent to the investigation.

On December 21, 1981, the Internal Affairs investigators obtained a statement from appellant. Prior to making her statement appellant was informed that the purpose of the investigation was to inquire into the finding of drugs and drug paraphernalia in her home on October 30, 1981. In her statement appellant denied having seen the contraband in her home prior to the burglary, denied having seen either her son or roommate with the discovered materials before the burglary, denied ownership of the "hash" pipes discovered and stated that they had been disposed of, denied ever selling drugs from her home, disclaimed any knowledge of the sale of drugs by any other member of her household, and denied ever smoking marijuana while on duty. Appellant also reiterated her belief that the contraband may have been planted in her home by a revenge-minded ex-boyfriend.[1]

On April 14, 1982, appellant's then immediate supervisor, Sgt. Gary McCready, prepared an incident report on the results of the Internal Affairs investigation. The report noted that in light of the findings, appellant was in violation of the KCPD Rules of Conduct and hence subject to discipline. Sgt. McCready therefore recommended that discipline be imposed. Appellant reviewed and signed this report. The report and the investigation file were then

---

**1.** On March 19, 1982, appellant submitted to a polygraph examination as she had earlier requested. The polygraphist determined that in each of three separate tests deception was indicated in appellant's answers to the following questions:

Q. That marijuana found in your bedroom on 10-31-81, did it belong to you?
A. No.
Q. Since being a police officer, have you ever allowed any illegal drugs to be sold from your home?
A. No.
Q. Did you ever allow any illegal drugs to be brought into your home?

A. No.

We are fully cognizant that testimony concerning the polygraph examination would not be admissible at trial. We note this information here solely because it was part of the Internal Affairs investigation file on which respondent Caron based his decision to discipline appellant. As such, the polygraph information is pertinent to the question of whether the process afforded appellant was sufficient to determine whether there was reasonable grounds to believe that the charges against appellant were true, and supported the proposed action.

sent up the KCPD chain of command where they were reviewed by appellant's Shift Commander, Division Commander, and Bureau Commander. Each of these individuals recommended disciplinary action.

On April 21, 1982, after reviewing the Internal Affairs investigation file,[2] including all the reports and statements made in connection with that investigation, respondent Caron concurred in the findings and recommendations of appellant's commanders, and assessed a ten-day suspension without pay. Chief Caron advised appellant of the suspension by letter, dated April 22, 1982. The suspension was operative from April 29, 1982 through May 10, 1982.

On May 4, 1982, appellant requested that the suspension assessed by Chief Caron be reviewed by respondent Board of Police Commissioners pursuant to § 84.610, RSMo 1978. That section provides:

Any police officer, policeman or employee adversely affected by any action taken by the chief *which he is required to report to the board under the provisions of subdivision (1) of section 84.500* shall have the right to have such action of the chief of police reviewed by the police board upon filing with the secretary of the board within ten days after the effective date of such action a written request for review by said police board. Whereupon the police board shall grant a public hearing within fifteen days after the filing of such request. The board shall have the power to inquire into all the facts and circumstances pertaining to such action and may compel the attendance of witnesses by subpoena at the request of either the police officer, policeman or employee involved, the chief

of police or any member of the board. The board shall have the power upon such hearing to affirm, modify or reverse such action of the chief and may make such other orders as the board may deem necessary. The board shall report all decisions in writing to the chief of police and to the officer or employee involved. Each decision of the police board in such cases shall be final and not subject to review by any court. (Emphasis added.)

Section 84.500(1), RSMo 1978, provides, in pertinent part, that the Chief of Police shall:

Have the power to appoint, subject to approval of the board, and shall have the power to promote, discipline and suspend all police officers and policemen. The chief shall also have the power to appoint, subject to the approval of the board, and to promote, discipline, suspend or discharge such employees of the police department other than police officers or policemen as may be specified by resolution of the board. A report of all such actions taken (*other than suspensions of less than fifteen days*) shall be submitted to the board at its next meeting). (Emphasis added.)

On May 10, 1982, respondent Board of Police Commissioners notified appellant that because her suspension was for less than fifteen days, she was not entitled to a hearing before the Board under § 84.610. Appellant brought this action. The parties each filed motions for summary judgment. The trial court sustained respondents' motion.

**B.**

Appellant argues that her constitutionally protected property interest in the emolu-

---

**2.** Appellant claims that the interdepartmental memoranda prepared by her "were not passed up the chain of command to respondent Caron to be considered by him *in connection with the memorandum prepared by Capt. Brauninger."* (Emphasis added.) Appellant also asserts that, "Respondent Caron did not receive appellant's Inter-Department Communications for consideration *before reaching his decision to assess disciplinary action* to appellant...." (Emphasis added.) As the emphasized language suggests,

these are different allegations, involving different time frames. On his part, respondent Caron avers that he "review[ed] the investigation file of the Internal Affairs Division, including all reports and statements contained therein ...", and that he was "fully advised of plaintiff's version of the facts surrounding the events of October 30, 1981, and the presence of the materials found at her house prior to my decision to suspend her for ten (10) days...."

ments of her office (her rank and compensation), and her constitutionally protected liberty interest in her good name and reputation as a police officer have been infringed in violation of the due process guarantees of the state and federal constitutions. Specifically, appellant alleges that she did not receive notice prior to the disciplinary action, that she was not given a hearing where she could offer evidence on her own behalf or contest adverse evidence, and that her case was not reviewed by an objective factfinder.

Appellant further urges that § 84.500 and § 84.610 violate her constitutional right to equal protection in that they provide for review of suspensions of 15 days or more by the Board of Police Commissioners, but do not provide for Board review of suspensions of less than 15 days, thus leaving no independent review for a 10-day suspension like that received by appellant. Appellant claims that this statutory framework denies her fundamental right to procedural due process, and thus must be strictly scrutized to determine whether the classification limiting Board review to suspensions greater than 15 days is necessary to a compelling state interest. Under this test appellant urges that the statutory classification does not pass muster and hence must be declared unconstitutional.

Respondents counter, contending that appellant does not have a constitutionally protected interest in either property or liberty, and, therefore, is not entitled to any constitutionally mandated procedures. Alternatively, respondents argue that even if appellant's interests are entitled to Fourteenth Amendment protection, she was afforded all the process due her, including notice and an opportunity to present her version of the incident. Respondents also note that under § 536.150, RSMo 1978, appellant has an avenue for independent, post-disciplinary review of the action taken by Chief Caron. Respondents further assert that absent a due process deficiency, § 84.500 and § 84.610 need only be reviewed to determine whether the statutory classification embodied therein is rationally related to a legitimate state interest. Respondents assert that the classification withstands such review, and therefore the statutes do not deny appellant her right to equal protection.

## II.

■ In determining whether appellant was denied her constitutionally protected right to procedural due process, a two-step analysis is required. We must first ascertain whether the disciplinary sanction imposed on appellant deprived her of a property or liberty interest protected by the Fourteenth Amendment: "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property ... [and] the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If a protected interest is impinged, we must then determine whether the procedures followed are sufficient under the requirements of the Constitution.

## A.

■ Appellant asserts that the suspension without pay deprived her of a protected property interest in the emoluments of her office. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a utilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*, at 577, 92 S.Ct. at 2709. Property interests are not created by the Constitution. "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Id.; Cleveland Board of Education v. Loudermill*, —— U.S. ——, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). A property interest in employment therefore, can be created by statute, ordinance, or by an express or implied contract. *Bishop v. Wood*, 426

U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

■ Under § 84.600, RSMo 1978, KCPD officers who have served at least six months probationary service may be appointed to the police force, and once appointed, may be discharged or removed only for cause. *Pfefer v. Board of Police Commissioners*, 654 S.W.2d 124, 127–28 (Mo.App.1983). Thus, a nonprobationary KCPD officer, like appellant, has a constitutionally protected property interest in continued employment. *Heidebur v. Parker*, 505 S.W.2d 440, 444 (Mo.App.1974). This employment right includes an interest in the office itself, as well as the emoluments of the office (*e.g.*, rank and compensation).

■ As long as a property deprivation is not *de minimus*, its gravity is irrelevant to a determination of whether due process should be afforded. *Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). The length and consequent severity of a deprivation are considered in determining what procedural protections are constitutionally required, but not in determining whether the deprivation entitles appellant to due process. Because appellant has been denied the emoluments of her office for the period of the suspension, the sanction imposed was more than *de minimus*. Our reading of relevant federal cases leads us to the conclusion that this involuntary suspension deprived appellant of a constitutionally protected property interest.[3]

3. Respondents contend however, that since state law creates the property interest, state law can limit the interest by setting the terms for its removal. Respondent's contention—that the state law which creates a property interest can establish the manner in which that interest can be removed—is eminently reasonable. The plurality opinion in *Arnett v. Kennedy*, 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974) adopted just such a position. A present majority of the United States Supreme Court do not subscribe to the well-reasoned *Arnett* plurality opinion. *See Loudermill, supra*, 105 S.Ct. at 1493.

## B.

■ Appellant also claims that the suspension deprived her of a constitutionally protected liberty interest. However, as noted by the Supreme Court in *Loudermill*, appellant's failure to allege that the reasons for her suspension were *published* preempts any such claim.[4] *Id.*, 105 S.Ct. at 1496, n. 13.

## C.

Having concluded that appellant was deprived of a protected property interest, the question remains as to what process is due. *Goss, supra* 419 U.S. at 577, 95 S.Ct. at 738.

■ The "root" requirement of the Due Process Clause is that a person facing a deprivation of property receive notice and an opportunity for hearing appropriate to the nature of the case. *Loudermill, supra*, 105 S.Ct. at 1493; *Roth, supra*, 408 U.S. at 569–70, 92 S.Ct. at 2705. The specific dictates of due process are determined by balancing the competing interests at stake in the particular case: "[F]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

4. Appellant's petition states that "[t]he disciplinary action taken against [appellant] has resulted in the demeaning of the good name of [appellant] before members of the public, her family and friends, as well as her peers in the Police Department." At most, her petition alleges that the *fact* of her discipline, having become known to the public, has damaged her reputation. The petition does not allege, however, that respondents caused this fact to become public, nor that respondents published the *reasons* for her discipline.

In *Loudermill, supra,* the Supreme Court considered the process due Ohio public employees prior to their termination by the defendant school boards. Under Ohio law, the employees could be terminated only for cause, and were entitled to full post-termination evidentiary hearings and judicial review. After balancing the competing interests, the court concluded that pre-deprivation process in public employment cases need not definitively resolve the propriety of the employer's action. *Id.,* 105 S.Ct. at 1495. Rather, the pre-deprivation process must simply provide an "initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* Specifically, the Court held that where a prompt post-deprivation evidentiary hearing is available, due process requires only that the employee be afforded notice of the charges, an explanation of the employer's evidence, and an opportunity to present his or her side of the story prior to the deprivation. *Id.*

██ Analysis of the three competing interest at stake in the present case confirms that appellant was not constitutionally entitled to more extensive pre-deprivation procedures than those found to be warranted in *Loudermill.* Appellant's private interest is in unbroken employment and the uninterrupted receipt of the benefits of that employment. While the temporary loss of this interest is not insignificant, it is less compelling a deprivation than that experienced by the terminated employees in *Loudermill.*

The governmental interest, on the other hand, is stronger in the case at hand than in *Loudermill.* The ability of the chief of police to maintain the discipline, morale, loyalty and effectiveness of the department and the public's confidence in the department depends on prompt and direct disciplinary action against personnel who engage in misconduct. A ten-day suspension without pay is an important disciplinary tool for less serious infractions of departmental policies. A requirement of extensive, formal hearings before such a suspension could be imposed would needlessly distract the KCPD from its law enforcement function. While these concerns do not entirely excuse respondents from affording KCPD personnel a pre-disciplinary opportunity to be heard, it does suggest that the extent of pre-discipline process need not be elaborate.

Finally, the risk of erroneous disciplinary action was slight, in view of both the pre- and post-deprivation procedures afforded her.[5] In particular, the pre-deprivation procedure provided appellant with a meaningful opportunity to participate in the pre-discipline Internal Affairs investigation both by making written statements (which were made a part of the disciplinary file) and by submitting to a polygraph examination. In their entirety, the pre-deprivation processes afforded appellant were co-extensive with those found to be justified under the facts in *Loudermill—i.e.,* affording appellant notice of the charges and the evidence against her and an opportunity to present her side of the story. *Id.,* 105 S.Ct. at 1495.

██ We cannot therefore conclude that appellant was constitutionally entitled to more extensive process than that afforded her prior to her suspension. Appellant does not challenge the sufficiency of the post-suspension process afforded by § 536.-150, nor would she have standing to do. Generally, only those who are adversely affected by a statute have standing to challenge its constitutionality. *Ryder v. County of St. Charles,* 552 S.W.2d 705, 707

---

5. Section 536.150 authorized a full post-deprivation evidentiary hearing before the circuit court to establish the underlying facts relative to appellant's suspension. *See Phipps v. School District of Kansas City,* 645 S.W.2d 91, 95 (Mo.App. 1982) (in review under § 536.150, court "does not *review* evidence but *determines* evidence, and on the facts as found adjudges the validity of the agency decision."). Once those facts were established, the circuit court would be empowered to determine whether the disciplinary decision was "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or [involving] an abuse of discretion." § 536.150.

(Mo.Banc 1977). Appellant did not avail herself of this statutory procedure for review. A party may not challenge the sufficiency of review procedures which have not been invoked. *Miller v. Police Retirement System of St. Louis,* 296 S.W.2d 78, 80 (Mo.1956); *see also Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (public employee without standing to challenge process afforded by statutes which were never applied to him).

■ Appellant alleges that her inter-departmental communications were not before Chief Caron when he rendered his decision. Appellant points to no evidence in support of these allegations. Conversely, respondent Caron's affidavit filed in support of respondents' Motion for Summary Judgment, clearly states that he reviewed the entire Internal Affairs investigation file, "including *all* reports and statements contained therein ..." (emphasis added), and was fully apprised of appellant's explanation of the incident, before ordering the suspension. Even viewing the record in the light most favorable to appellant, we are firmly convinced that appellant was given a sufficient opportunity to respond.

### III.

Appellant also claims that § 84.500 and § 84.610 violate her right to equal protection by denying review by the Board of Police Commissioners for suspensions of less than 15 days.

■ In equal protection claims the first step is to ascertain whether the statutory scheme "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution.... *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17 [93 S.Ct. 1278, 1288, 36 L.Ed.2d 16] (1973)"; *State Board of Registration v. Giffen,* 651 S.W.2d 475, 479 (Mo. banc 1983). If so, the statutory scheme receives strict judicial scrutiny to ascertain whether the classification is necessary to a compelling state interest. *Id.* If the classification neither burdens a sus-

pect class, nor impinges upon a fundamental right, the only issue is whether the classification is rationally related to a legitimate state interest. *Friedman v. Rogers,* 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979); *Giffen, supra,* 651 S.W.2d at 479. In such a situation the burden is on the person attacking the classification to show that it does not rest upon any reasonable basis, and is purely arbitrary. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911); *City of St. Louis v. Liberman,* 547 S.W.2d 452, 458 (Mo. banc 1977). Under this analysis a classification will be upheld if any state of facts can be reasonably conceived which would justify it. *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Liberman, supra,* 547 S.W.2d at 458.

■ Absent a due process violation, appellant's temporary suspension from government employment does not involve the deprivation of a fundamental right since the right to governmental employment is not a fundamental one. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Similarly, the class "police officers suspended for less than 15 days" is not a class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Rodriguez, supra,* 411 U.S. at 28, 93 S.Ct. at 1294.

KCPD has a significant interest in regulating the conduct of its employees. *Pollard v. Board of Police Commissioners,* 665 S.W.2d 333, 339 (Mo. banc 1984). In this regard the legislatively-drawn dividing line providing Board review only to suspensions greater than 15 days serves several valid and important state interests. These include but are not limited to prompt and efficient discipline in minor disciplinary cases, conservation of time, resources and personnel in minor disciplinary cases, and

**140**

allocating the time of the Board of Police Commissioners to items of relatively greater impact and importance. Further, the legislature could have rationally concluded that the frequency of brief, disciplinary suspensions would overwhelm the Board's administrative facilities, making their implementation so costly that it would destroy their effectiveness as a regular disciplinary tool.

Appellant argues that there is no logic to the conclusion that a 15-day suspension is "major," while a 14-day suspension is "minor," and thus not subject to Board review. The rational basis test, however, "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Murgia, supra,* 427 U.S. at 314, 96 S.Ct. at 2567. Appellant's arguments are more properly directed to the legislature, and not this Court.

In sum, the statutory scheme established in § 84.500 and § 84.610 does not violate the equal protection clause.

The judgment of the trial court is affirmed.

HIGGINS, C.J., and BILLINGS, DONNELLY, WELLIVER and RENDLEN, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur except as to footnote 3.