Bernard F. EDWARDS, Jr., Respondent,

v.

Vincent C. SCHOEMEHL, Jr.,
Appellant.

No. 70637.

Supreme Court of Missouri,
En Banc.

Feb. 14, 1989.
Rehearing Denied March 14, 1989.

Julian L. Bush, Asst. City Counselor and James J. Wilson, City Counselor, St. Louis, for appellant.

Raymond Howard, St. Louis, for respondent.

BLACKMAR, Judge.

The plaintiff-respondent was appointed City Court Judge of the City of Saint Louis for a term ending April 1, 1989. The appointment is evidenced by a document dated April 16, 1985, and signed by Mayor Vincent C. Schoemehl, Jr. On May 30, 1986, the respondent was notified by letter signed by Marie Jeffries, Deputy Chief of Staff, that he was suspended without pay pending investigation of charges as to whether he "timely complied with the residency requirements ..." of the city charter. The letter of notification commenced

with the words, "On behalf of the Mayor of the City of St. Louis."

On June 4, 1986, the respondent filed suit challenging the propriety of his suspension. On June 9 and 11, 1986, Jeffries communicated with him, offering him a hearing relating to charges of misconduct not involving his residency. The trial judge held that these later communications were not material because they involved charges other than those on which the suspension was based. We agree.

Following a bench trial of the issues raised by the respondent's first amended petition the court, on April 16, 1987, entered judgment in favor of the plaintiff, finding that the suspension failed to meet constitutional standards for a variety of reasons. The judgment was accompanied by detailed findings of fact and conclusions of law. The plaintiff was awarded back pay from May 30, 1987 to the date of the judgment. A claim for attorneys' fees was denied and the plaintiff has not appealed. The court of appeals affirmed the judgment on the defendant mayor's appeal. We granted transfer because of the importance of the issues relating to the termination of city officials. We conclude that the judgment is correct and so affirm, for reasons which differ somewhat from those relied on by the trial court and the court of appeals. We do not need to consider all of the issues presented by the parties, but we do dispose of those which have been briefed and which would necessarily impact further litigation relating to the respondent's tenure as city court judge.

## I—Removal of City Court Judges

The plaintiff was appointed in accordance with Article VII, Section 1 of the Charter of the City of St. Louis, reading as follows:

[The mayor] shall appoint and may remove all nonelective officers and all employees, except as otherwise in this charter provided, but shall not remove any office, department or division head appointed by him, except for cause. . . .

The position of City Court Judge is established by Article XII, Section 1 of the Charter. The Charter is silent as to the procedure for removal of an officer or employee who may be removed only for cause, and we are cited to no ordinance provision.

The plaintiff-respondent argues vigorously that the removal of a city court judge by the mayor violates the principle of separation of powers monumented by Article II, Section 1 of the Missouri Constitution.[1] We do not agree that there is such a violation. The mayor has the sole and unfettered authority to appoint city court judges, and the power to remove for cause is expressly conferred upon him. The city charter was in force, in substantially its present form, when the Constitution of 1945 was adopted, and Article II, Sec. 1 was taken bodily from the Constitution of 1875. That section was not designed to rule out all interrelation between the various branches of the government. The present controversy relates not to the exercise of the functions of the judicial department, but to the tenure of the judge.

The respondent also argues that the sole method of removal of judges is found in Article V, Section 24 of the Missouri Constitution, providing for the establishment of a Commission on Retirement, Removal and Discipline of judges. *In re Fullwood*, 518 S.W.2d 22 (Mo. banc 1975), holds that judges of the City Court of the City of St. Louis are subject to discipline in accordance with that article. Subsection 3 of Section 24, however, shows positively that the remedies provided by that subsection are not exclusive. *See Fullwood*, 518 S.W.2d at 29 (Bardgett, J., dissenting) for a discussion of other methods of removal.

Article V has been amended since *Fullwood* to make it clear that a municipal

---

**1.** Article II, Sec. 1, reads as follows:

The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confined to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

court is a part of the circuit court of the county or city in which it functions. Mo. Const. Art. V, § 27.2(d). We discern no purpose in this amendment of eliminating any removal procedure previously available. We therefore reject the respondent's challenge to the authority of the mayor. The long established charter provisions giving the mayor the power to remove appointees, subject only to the qualification that an "office, department or division head appointed by" the mayor may be removed only "for cause," do not transgress constitutional boundaries.

### II—The Suspension Procedure

Inasmuch as the respondent could be removed only for cause he had a property interest in his job, of which he could be deprived only by procedures consistent with due process of law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Belton v. Board of Police Commissioners,* 708 S.W.2d 131 (Mo. banc 1986). The appellant argues that Edwards has no property right under state law and that the due process clause of our constitution should not be construed to incorporate any such right. We do not pursue this contention because the Supreme Court decisions construing the due process clause of the fourteenth amendment impose minimum procedural requirements with which the state and all governmental subdivisions must comply.

The evidence shows that Jeffries, on May 30, 1986, advised the respondent that she wanted to meet with him.[2] She gave him no prior indication of the occasion for the meeting. When he arrived she told him about complaints about his courtroom demeanor and about his failure to pay outstanding parking tickets. There is a conflict in the evidence about whether his place of residence was discussed at the meeting, but we accept the trial court's finding that Jeffries testified credibly that there was discussion of this subject. Jeffries offered the respondent the opportunity to resign and told him that she was "looking for another judge." The letter notifying him of his suspension without pay was sent following this meeting.

The respondent complains that he was given no notice of the subject matter of the meeting when he was called to attend and that Jeffries presented only "hearsay" information, depriving him of the opportunity to meet his accusers face to face. He argues that this meeting was lacking in the process due for a presuspension hearing of a city court judge. Both the trial judge and the court of appeals appear to have accepted this contention. We do not need to consider it at length but, inasmuch as the book is not completely closed on the incident, we consider it appropriate to call attention to the statement in *Loudermill* that a pretermination hearing, though necessary, "need not be elaborate." 470 U.S. at 545, 105 S.Ct. at 1495. The point is further analyzed in *Belton,* 708 S.W.2d at 138.[3]

We conclude, nevertheless, that the suspension procedure here employed was fatally flawed. The power to suspend is derived from the power to remove for cause. The power to remove is entrusted to the mayor and to the mayor alone. He must make a finding. There is no showing in the record that the mayor played any part in the decision to suspend. The suspension was decreed by Jeffries. She testified that she reported her action to the mayor, but her testimony was short on details and the trier of the fact was not obliged to accept this testimony. Inasmuch as the appellant mayor could so easily have proved that the decision was actually his, if such were the fact, we are not disposed to remand the case to permit the taking of additional testimony on the point.

Jeffries bases her claim of authority on a document signed by the mayor, dated Janu-

---

**2.** We take the record facts supportive of the judgment, except when the trial court has found otherwise.

**3.** Decisions of the United States Supreme Court and this Court make clear, however, that an informal pretermination hearing is constitution-

ally sufficient only when a full post-termination hearing is available. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495; *Belton,* 708 S.W.2d at 138. 138. Post-termination judicial review was available to respondent under § 536.150, RSMo 1986.

ary 23, 1986, and authorizing her to take "all personnel actions" in the mayor's name with regard to "employees of mayor's office." The authorization does not fit this case. The respondent was not an employee of the mayor's office, but an officer holding a position specifically established by the charter, in which he did not perform his daily duties under the mayor's supervision. Jeffries expounded fully on the wide sweep of her authority. She claimed that she had the authority to fire the principal officials of the city, such as the city counselor, and to appoint their successors, but we normally take the evidence favorable to the judgment. The respondent has failed to demonstrate that the decision to suspend, conferred only upon the mayor, by Art. VII, Sec. 1 of the City Charter, was actually the decision of the mayor.

The mayor, of course, may make use of assistants in carrying out the manifold duties of his office. We do not say that he is obliged to preside in person over *Loudermill* hearings, or to meet personally with an employee when suspension or discharge is contemplated. He may also allow others to proclaim and to sign his directives, in the manner of a military adjutant publishing the orders of the commanding officer. But he may only delegate execution and implementation, and not decision, especially of a matter in which his express finding of cause is required. It follows that the respondent was never effectively suspended. The record, furthermore, shows no definitive action to effect suspension or termination between the filing of suit and the date of the trial court's decision, either by the mayor or by Jeffries. When the respondent declined the proffered post-termination hearing, no additional action was taken until the trial. He therefore continued on an invalid suspension.

### III—Mitigation of Damages

■ The appellant properly argues that the respondent has a duty to take reasonable steps to mitigate damages by doing what he could to earn income during the

time when he would otherwise be attending to his court duties.[4] The city court position was part-time, requiring only afternoon work. The respondent was a partner in a law firm, and, following his suspension, he had more time to devote to the firm's business. He testified at trial, however, that his earnings from law practice had not increased during the six months following his suspension from the judgeship, even though he was available and willing to handle all legal business that appeared. The trial court found that the appellant had failed to carry his burden of proof on the mitigation issue, and we will not disturb this finding.

### IV—Further Proceedings

The trial court decreed that the suspension be set aside and that the defendant be reinstated as City Court Judge, with back pay from "the date of his suspension to the date of this order." The judgment did not grant relief beyond that date.

■ The appellant sought to supplement the record on appeal to show that the mayor, shortly after the adverse judgment was entered, communicated with the respondent in writing, notifying him of the charges against him and offering a hearing. When the proffered hearing was refused the mayor, in a letter which he signed personally, notified the respondent of his dismissal. This post-hearing evidence is not properly a part of the record before us because it involves matters not raised by the pleadings or considered at trial. Inasmuch as the trial court's judgment effectively determined the rights of the parties only up to the date of the judgment, and nothing more, we express no conclusion about the effect of post-trial communications.

THE JUDGMENT IS AFFIRMED.

All concur.

**4.** *Edmonds v. McNeal,* 596 S.W.2d 403, 408 (Mo. banc 1980); *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138, 143 (Mo. banc 1975); *Davis v. Human Development Corp.,* 705 S.W.2d 540, 544 (Mo.App.1985).