CITY OF COLUMBIA, Respondent,

v.

Pamela HARDIN, Appellant.

No. WD 53853.

Missouri Court of Appeals, Western District.

Jan. 20, 1998.

Cullen Cline, Cline and Johnston, Columbia, for appellant.

William S. McKenzie, Columbia, for respondent.

Before SPINDEN, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant Pamela M. Hardin appeals her conviction of obstructing government operations in violation of Section 16–221 of the Code of Ordinances of the City of Columbia, Missouri. She claims that the trial court erred in giving a verdict-directing instruction that was confusing and misleading and which did not require the jury to find all of the facts necessary to constitute the offense. Ms. Hardin also argues that the ordinance is unconstitutional, both on its face and as applied, because it is void for vagueness and facially overbroad. We find that the verdict-directing instruction as submitted did not require the jury to find that Ms. Hardin physically interfered with police officers. Instead, the instruction allowed the jury to convict if it found that she attempted to interfere with them, even orally, and without any physical interference. This resulted in manifest injustice, and requires reversal and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of February 6, 1996, City of Columbia police officer Kent Unterseher responded to a report of vandalism in the parking lot of a beauty salon. When Officer Unterseher arrived at the scene, he saw eight-year-old Dante Hardin standing in the beauty salon's driveway and holding a slingshot. Because Dante matched the description given by the dispatcher, Officer Unterseher approached Dante and began asking him some questions. Dante's mother, Pamela Hardin, who had been working in the salon, came outside and identified herself as the boy's mother. Ms. Hardin stood behind her son and put her arms protectively around his chest.

Officer Unterseher testified that Ms. Hardin was yelling and before he was able to get Dante's name, Ms. Hardin told her son not to talk to the officer. Officer Unterseher explained to Ms. Hardin that he just needed to take information for a report, but Ms. Hardin refused to give her name or Dante's name, or speak with the officer at all. Ms. Hardin testified that she merely requested that the officer speak with her because Dante was only eight. Witnesses at the scene also testified that Ms. Hardin did not yell or scream at the officer. When the officer indicated that he believed the complainant over her, she refused to speak with him further.

Officer Unterseher testified that Ms. Hardin then took the boy's arm and told Officer Unterseher that she was going to go inside. Ms. Hardin claims that she told the officer she wanted to go inside to use the telephone. Officer Unterseher physically prevented Ms. Hardin from leaving and radioed for assistance. When Officer Rob Sanders arrived, he stayed with Ms. Hardin and Dante while Officer Unterseher went to speak with the complainant. Eventually, a group of approx-. imately six or eight other people who worked in or who were customers in the beauty salon came out to watch the incident. The officers told this group to go inside because they were "an unruly crowd."

Officer Unterseher testified that when he returned from talking with the complainant, Ms. Hardin still refused to cooperate with the police, so he finally said that he had no choice but to take the boy into custody. Ms. Hardin told the officers that she did not want her son taken without her. Witnesses testified that Ms. Hardin told police, "I'm not going to let you take my son without me.... I'm going to go with my son." They also stated that officers threatened to use mace on Ms. Hardin. At about that point, the complainant went up to Officer Unterseher and told him that there was no damage to her car from the rocks and she had not intended for things to get "blown out of proportion" as they then were, and that she would not press charges.

Additional officers arrived, and eventually more than eight police cars were at the scene. Officer Unterseher testified that Ms. Hardin continued to physically hold Dante and would not release him. He told her that if she did not release the boy he would be required to arrest her for interfering with an arrest. He claims there was a struggle, and the officers placed Ms. Hardin in handcuffs. The complainant again said she did not want to press charges, but Officer Unterseher ultimately told her it was out of her hands now. He transported both Ms. Hardin and her son to the police station. Witnesses from the beauty salon testified that they never saw Ms. Hardin physically resist the police.

Ms. Hardin was charged with the class B misdemeanor of obstructing government operations in violation of Section 16–221 of the Code of Ordinances of the City of Columbia, Missouri, and the class A misdemeanor of resisting arrest in violation of Section 16–202(a)(1). The jury found Ms. Hardin guilty of obstructing government operations, but found her not guilty of resisting arrest. The judge imposed a $100 fine and sentenced her to 15 days in jail, but suspended the jail time and placed her on one year of unsupervised probation with 40 hours of community service. This appeal followed.

## II. JURY INSTRUCTION

■ As her first point on appeal, Ms. Hardin claims that the trial court erred in giving Instruction Number 5, the verdict-directing instruction for the offense of obstructing government operations. She argues that the instruction was confusing, ambiguous, and misleading. Specifically, she argues that the instruction was defective because it allowed the jury to convict her without any finding that she used physical interference or physical conduct.

At trial, the judge read through the list of instructions to be given to the jury and stated, "Instruction No. 7 tendered by the Plaintiff is 330.014 (sic) given over any objection of the Defendant." [1] At this time, however, counsel had not yet made any objections on the record. After reading this list, the court then asked counsel, "Is there any specific objection that you want to be· heard on the record as to any of the instructions to be given ... by either side?" The record does not reveal whether an objection to Instruction No. 7 had previously been made off the record and that was why the court overruled objections before asking for specific objections. What it does show is that defense counsel replied, "None, Your Honor" in response to the question whether he had any additional specific objections after the court had already ruled.

---

**1.** This instruction was actually submitted to the jury as Instruction Number 5, not Instruction Number 7.

■ Ms. Hardin did raise the issue of instructional error in her motion for new trial. However, Rule 28.03 states:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Rule 28.03. While we do not approve of the judge's overruling objections before counsel has been given a chance to make a record of them, we must nonetheless conclude that Ms. Hardin has not preserved this issue for review because she did not make a specific objection at trial to the court's submission of Instruction 5 as required by Rule 28.03. *State v. Martindale,* 945 S.W.2d 669, 673 (Mo.App.1997); *State v. Campbell,* 935 S.W.2d 394, 396 (Mo.App.1996).

■ Because Ms. Hardin did not properly preserve this issue, we can review it, if at all, only as plain error under Rule 30.20. *Campbell,* 935 S.W.2d at 396. In light of the unusual procedure used here in ruling on objections to the instructions, we believe plain error review is appropriate in this case. "Instructional error rises to the level of plain error only if the instruction is so misdirected or so failed to adequately instruct the jury that it is apparent to the appellate court that the error affected the jury's verdict and caused manifest injustice or a miscarriage of justice." *State v. Brown,* 913 S.W.2d 919, 921 (Mo.App.1996). Ms. Hardin bears the burden of proving manifest injustice. *Id.*

As submitted to the jury, Instruction Number 5 read:

As to Count I, If you find and believe from the evidence beyond a reasonable doubt:

First, that on February 6, 1996, in the City of Columbia, State of Missouri, the defendant obstructed the performance of a governmental function, and

Second, that defendant did so by physical interference in that she attempted to prevent Dante Hardin from being taken into custody by police officers, and

Third, that defendant did so for the purpose of obstructing the performance of such governmental function,

then you will find the defendant guilty of obstructing government operations.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Ms. Hardin argues that Instruction Number 5 was defective because it allowed the jury to find her guilty without any finding that she used physical interference or physical conduct. Ms. Hardin asserts that the wording of the second paragraph permitted the jury to find her guilty merely upon a finding that she attempted to interfere with the officers by asserting her and her son's rights not to speak to them, or by trying to comfort her son, rather than actually physically interfered with the police.

Instruction No. 5 was based on MAI 330.14, which states in relevant part:

Second, that defendant did so by (physical (interference) (obstruction)) (the (use) (threat) of (violence) (force)) in that [*Describe how function was obstructed, impaired, hindered, etc., or describe what defendant did.*], and . . .

MAI 330.14. Here, the submitted instruction used the phrase "physical interference." Where it was required to include a description of that interference, it should have explicitly described Ms. Hardin's conduct, such as stating that she put her arms around Dante and held onto him while police were attempting to take him into custody. Instead, the instruction simply said that Ms. Hardin "attempted to prevent Dante Hardin from being taken into custody by police officers."

We agree with Ms. Hardin that the phrase which the State used to describe how a governmental function was obstructed did not adequately describe how Ms. Hardin obstructed, impaired, or hindered the police, nor did it describe what Ms. Hardin physically did to interfere. Instead, it was a conclusory statement that Ms. Hardin attempted to

do something and contained no requirement that Ms. Hardin actually did any physical act. It begged the question of how she attempted to prevent her son being taken into police custody, and whether she did so by actual physical interference with police attempts to take custody of him. It permitted a verdict based on Ms. Hardin's oral instruction to her son not to answer the officer's questions and her request that she be permitted to seek advice from her own parents, who were available nearby.

 In the absence of an actual description of the conduct by Ms. Hardin which allegedly constituted physical interference, the instruction may have confused the jurors and led them to convict even in the absence of any physical interference by Ms. Hardin. While the officer did testify to physical interference, there was also substantial other evidence, including evidence from witnesses watching the interaction between Ms. Hardin and police, that Ms. Hardin never physically interfered with the police, and that all she did was put her arms around her young son to comfort him because he was scared, attempt to get advice from her parents and verbally tell Dante not to speak to the police. She also requested that he not be taken into custody without her. None of her verbal acts would constitute physical interference, nor would they support a conviction for obstructing government operations. Under the instruction as submitted, however, the jury could have believed all this favorable testimony, not believed that Ms. Hardin had actually physically interfered with the officer's duties, and yet still found Ms. Hardin guilty because by doing these things she was "attempt[ing] to prevent Dante Hardin from being taken into custody by police officers." This error in the instruction thus misled the jury so substantially that it may have affected the verdict. It resulted in manifest injustice, and requires us to reverse and remand for a new trial.

## III. CONSTITUTIONALITY OF ORDINANCE

 In her second and third points on appeal, Ms. Hardin challenges the constitu-

tionality of Section 16–221.[2] In her second point, she argues that the ordinance is void for vagueness because it does not give adequate notice of what conduct constitutes a violation and it does not contain adequate standards to prevent arbitrary and discriminatory application. In her third point, Ms. Hardin asserts that the ordinance is facially overbroad because it prohibits constitutionally protected activity.

 Ms. Hardin has failed to preserve these issues for appeal. "A constitutional question is waived unless raised in the trial court at the earliest opportunity." *Crittenton v. Reed,* 932 S.W.2d 403, 406 (Mo. banc 1996). One of the reasons for this rule is to give the trial court an opportunity to rule on the issue. *Call v. Heard,* 925 S.W.2d 840, 847 (Mo. banc 1996). Here, Ms. Hardin made no claim at trial that the ordinance was either void for vagueness or facially overbroad. The first time she raised either of these issues was in her motion for a new trial. Any claim that the ordinance is unconstitutional was available to Ms. Hardin far in advance of trial, and by failing to raise these issues earlier she has failed to preserve them for review. *See State v. Sullivan,* 935 S.W.2d 747, 754 (Mo.App.1996). Therefore, her second and third points are denied.

For these reasons, we reverse and remand for a new trial on the charge of obstructing government operations.

All concur.

---

**2.** A claim that a municipal ordinance is unconstitutional is not within the exclusive appellate jurisdiction of the Missouri Supreme Court. *Alu-* *max Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907, 912 (Mo. banc 1997).