Mary M. "Pat" LAUBINGER,
Appellant,

v.

Dwayne C. LAUBINGER, Respondent.

No. WD 55912.

Missouri Court of Appeals,
Western District.

May 25, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1999.

Application for Transfer Denied
Aug. 24, 1999.

James T. Cook, Kansas City, for appellant.

Karen A. Plax, Kansas City, for respondent.

Before: SPINDEN, P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Mary M. "Pat" Laubinger appeals from the circuit court's orders *pendente lite* (*PDL*) entered in her dissolution of marriage proceeding, requiring her to pay: (1) temporary child support of $1,412 per month starting April 1, 1998, and $14,056 in retroactive support from March 1, 1997, to March 30, 1998, calculated at $1,004 per month; (2) attorney's fees of $5,000; and (3) costs of $2,500 to the respondent, Dwayne C. Laubinger.

The appellant raises six points on appeal. In her Points I and II, she claims that the trial court erred in entering its *PDL* orders without granting her request for a hearing and while proceeding under Sixteenth Judicial Local Circuit Court Rule 68.04 because it violated her due process rights. In her Points III and IV she claims the trial court erred in awarding temporary child support of $1,412 per month commencing April 1, 1998, because: (1) it misapplied the law in calculating the correct amount to award in that it used an improper version of Form 14; and (2) its finding as to the respondent's gross monthly income in calculating the presumed correct child support amount (PCCSA) pursuant to Form 14 was against the weight of the evidence. In Point V she claims the trial court erred in awarding retroactive temporary support of $14,056, calculated at the rate of $1,004 per month, because: (1) in doing so, it misapplied the law in that the award was made retroactive to March 1, 1997, which was prior to the date the respondent's application was made; (2) the respondent did not have custody of the child for whom support was due, Seth, until March 18, 1997; and (3) it failed to award her credit against the award for amounts paid by her on behalf of the child in the respondent's custody. In Point VI, she claims the trial court's awards of temporary attorney's fees and costs were against the weight of the evidence.

We affirm in part, and reverse and remand in part.

### Facts

The parties were married on June 12, 1970. On January 8, 1996, the appellant filed her petition for dissolution of marriage in the Circuit Court of Jackson County, Missouri. The respondent filed his answer and cross-petition for legal separation on May 21, 1996. There were four children born of the marriage: Jennifer Mentlo Laubinger, born on January 24, 1976; Seth Allen Laubinger, born on April 5, 1980; and twins, Sara Highers Laubinger and Jean Highers Laubinger, born on January 1, 1987. During the time period at issue here, Jennifer was in the custody of the respondent and was attending college in New Orleans. She became emancipated on January 24, 1998. Seth has been in the custody of the respondent since March 1, 1997, and Sara and Jean have been in the custody of the appellant since March 1, 1997.

On March 20, 1998, the respondent notified the appellant's attorney of his intent to file an application for *PDL* orders regarding child support, attorney's fees and costs pursuant to Local Rule 68.04. On March 30, 1998, the respondent filed his application and required forms under the rule, along with his suggestions and affidavit in support of his application. The appellant filed her suggestions and affidavit in opposition to the application along with her required forms. The respondent filed his reply to the appellant's suggestions in opposition on April 4, 1998.

In his application for *PDL* orders and suggestions in support thereof, the respondent requested that the appellant be or-

dered to pay child support, retroactive child support, attorney's fees, and costs, and maintain health insurance for the children and pay a percentage of the children's uninsured medical expenses. The respondent alleged in his application that his gross monthly income was $3,000 and that the appellant's was $17,414. As such, he requested child support in the amount of $1,412 per month commencing on April 1, 1998, and $1,004 per month retroactive support from March 1, 1997. He further alleged that he did not have sufficient income or assets to prosecute the dissolution action and requested that the appellant be ordered to pay temporary attorney's fees and costs.

In her suggestions in opposition to the respondent's application for *PDL* orders, the appellant denied that her gross monthly income was $17,414 and alleged that it was instead $10,376.75. She also alleged that the respondent had a gross monthly income of approximately $6,349.85, but claimed that she could not arrive at an exact figure due to the respondent's failure to provide her with current financial information, as requested. The appellant conceded that, pursuant to Form 14, she would owe the respondent child support for Seth, but claimed that the proper amount was $63.57 per month. As such, she alleged that each party was able to fully support the children in their care and that no child support should be ordered for either party. The appellant further alleged that the respondent had sufficient assets to pay his own attorney's fees and costs.

On April 28, 1998, the trial court, the Honorable Christine Sill–Rogers, entered its *PDL* orders finding the appellant's gross monthly income to be $17,417, and the respondent's to be $3,000. The court ordered the appellant to pay temporary child support in the amount of $1,412 per month commencing April 1, 1998; retroactive child support in the amount of $14,056 for the period from March 1, 1997, to March 30, 1998; temporary attorney's fees in the amount of $5,000; and temporary costs in the amount of $2,500. The appellant was also ordered to maintain health insurance on the children and pay 85.3 percent of their uninsured medical, dental, vision, prescription, and orthodontic expenses.

On April 30, 1998, the appellant filed her request for an oral hearing on the *PDL* orders. In her suggestions in support of this motion, filed on May 4, 1998, she alleged that the trial court had used an improper version of Form 14 to calculate the correct amount of child support and that a factual dispute existed as to the true amount of the parties' respective gross monthly incomes. The trial court never ruled on this motion. The appellant filed her notice of appeal on June 3, 1998.

This appeal follows.

### Standard of Review

 *PDL* orders for child support, attorney's fees, and costs are authorized by §§ 452.315[1] and 452.355, RSMo 1994, and are appealable. *Wakili v. Wakili,* 918 S.W.2d 332, 338 (Mo.App.1996). We review such orders under the same standard as a judge-tried case. *Epple v. Epple,* 893 S.W.2d 886, 887 (Mo.App.1995). As such, we will affirm an order *PDL* of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* We view the evidence and the reasonable inferences drawn therefrom in a light most favorable to the prevailing party and disregard all contrary evidence. *Ryder v. Ryder,* 795 S.W.2d 411, 412 (Mo.App.1990). A trial court has greater discretion in entering orders *PDL* than final orders, and a reviewing court must be extremely cautious in altering such orders because they are temporary and their effects do not extend beyond the final hearing of the case. *Stewart v. Stewart,* 866 S.W.2d 154, 156 (Mo.App.1993).

1. All statutory references are to RSMo Supp. 1997, unless otherwise indicated.

## I.

In her Point I, the appellant claims that the trial court erred by misapplying the law because its entry of its *PDL* orders for child support, attorney's fees and costs, without granting her request for a hearing and while proceeding under Local Rule 68.04, violated her due process rights, in that the rule is unconstitutionally vague and, therefore, void in that it does not specify whether or when a hearing is required on applications for orders *PDL*, allowing for arbitrary and discriminatory enforcement of the rule. With respect to this issue, it is well settled in the law that due process requires that a statute or rule have sufficient standards to prevent its arbitrary and discriminatory enforcement. *State v. Allen*, 905 S.W.2d 874, 877 (Mo. banc 1995). Local Rule 68.04 governs applications for orders *PDL* in dissolution proceedings in Jackson County, which comprises the Sixteenth Judicial Circuit of Missouri, and provides, in pertinent part:

1. Upon the filing of a verified application of any party, after reviewing pleadings, including each party's Statement of Income and Expenses (Form 1402B), the Asset Statement in Support of Application for Pendente Lite Order (Form 6804D), and if child support is requested, the Child Support Worksheet (Form 14), the court may enter an order pendente lite, without the necessity of a formal hearing, for temporary child support, maintenance, attorney's fees and costs....

3. An oral hearing may be requested (Form 6804H) on the order pendente lite (Form 6804G), or other relief requested in the application, but any request will not suspend or delay commencement of the rights and obligations under the order pendente lite. Any modification of the order pendente lite after an oral hearing shall be retroactive to the effective date of the original order.

4. Any request for an oral hearing on an order pendente lite may, in the sole discretion of the court, be submitted to a master....

6. The master shall submit his report to the court (Form 6804J) within 7 days of the hearing after which the court shall issue its judgment on the matters raised in the hearing.

The appellant, in making her claim that the rule is constitutionally void for vagueness, contends that, as written, it is subject to at least two possible interpretations as to whether and when an oral hearing should be conducted. As to the first interpretation, the appellant asserts that the language in the first paragraph of the rule that "the court may enter an order pendente lite, without the necessity of a formal hearing," and the language in the third paragraph that an "oral hearing may be requested (Form 6804H) on the order pendente lite" and "any request will not suspend or delay commencement of the rights and obligations under the order pendente lite," can be read as providing for a hearing only *after* the entry of an order *PDL*. As to the second interpretation, the appellant asserts that the language in the first paragraph of the rule that allows "the court [to] enter an order pendente lite, without the necessity of a formal hearing," can be read as allowing the court to enter an order *PDL* without an oral hearing. In this respect, the appellant notes that the language of the rule does not expressly *require* an oral hearing, but only addresses when a request for an oral hearing can be made. As such, the appellant argues that, because the rule, as written, contains no standards governing whether or when a hearing is required, it could be applied in an arbitrary and discriminatory manner.

Before we can address the merits of the appellant's claim in this point, we must first address the contention of the respondent that the appellant waived the claim raised in this point and did not preserve it for appellate review by failing to raise it at the earliest opportunity. In this respect, the respondent argues that the appellant

should have raised her claim with the trial court in her suggestions and affidavit in opposition to his application for an order *PDL* or in her request for an oral hearing, which was filed two days after the court's entry of its order. We agree.

 An allegation that a rule or statute is void for vagueness is grounded in the due process clauses of the Fifth and Fourteenth amendments to the U.S. Constitution, and Article I, § 10 of the Missouri Constitution. *Woods v. City of Lake Lotawana,* 752 S.W.2d 869, 872 (Mo.App. 1988) (*citing City of Festus v. Werner,* 656 S.W.2d 286, 287 (Mo.App.1983)). A constitutional question of whether a statute or rule is void for vagueness "must be raised at the earliest possible time consistent with good pleading and orderly procedure under the circumstances of the case; otherwise, it is waived." *Id.* (*citing Creamer v. Banholzer,* 694 S.W.2d 497, 499 (Mo. App.1985)). An obvious reason for the rule is to promote judicial economy by preventing a party from sandbagging by waiting until the outcome of the proceeding is known before determining whether to raise the issue. Another reason, which also promotes judicial economy, "is to give the trial court an opportunity to rule on the issue." *City of Columbia v. Hardin,* 963 S.W.2d 6, 10 (Mo.App.1998) (*citing Call v. Heard,* 925 S.W.2d 840, 847 (Mo. banc 1996)). An attack on the constitutionality of a statute or rule is of such importance that a record concerning the issue should be fully developed at trial and should not be raised as an afterthought on appeal. *Hollis v. Blevins,* 926 S.W.2d 683, 684 (Mo. banc 1996). To properly raise a constitutional issue, a party must: (1) raise it at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review. *Ford Motor Credit Co. v. Housing Auth.,* 849 S.W.2d 588, 592 (Mo.App.1993) (*citing*

*Callier v. Director of Revenue,* 780 S.W.2d 639, 641 (Mo. *banc* 1989)).

In response to the respondent's contention that she waived her constitutional attack on the rule for vagueness by failing to raise it with the trial court, the appellant argues that this appeal represented her first opportunity to raise her claim because she was not harmed by and had no standing to attack the rule until after the trial court had entered its *PDL* orders without granting her request for an oral hearing. In making this argument, the appellant attempts to denominate her attack on the rule as one based on its application, rather than on its being unconstitutional on its face. Although she does mention in her discussion in Point I the rule's being unconstitutional in its application, the clear thrust of her attack in this claim is that it was unconstitutional on its face. This is made obvious, not only by her repeated assertions in her brief in Point I that the language of the rule was vague as written because there were no standards as to "whether and when" an oral hearing would be conducted, but by her assertion that this alleged vagueness allowed "for arbitrary and discriminatory enforcement of the Rule." *See Hardin,* 963 S.W.2d at 10. Given her stated concern about how the rule was written and the consequences thereof, we fail to see how the appellant could have been surprised by the trial court's applying the rule in entering its orders *PDL*, without granting her request for an oral hearing. Moreover, at the time the respondent filed his application, the rule in question was clearly implicated, conferring upon the appellant "standing" to raise her constitutional claim. *See State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 (Mo. *banc* 1982) (holding that standing for purposes of raising a constitutional claim arises when a party has an actual and justiciable interest susceptible to protection). Hence, the appellant's claim, that the rule was void for vagueness because it failed to specify whether or when an oral hearing would be conducted, arose prior to

the time she would have been forced to take an appeal on the *PDL* orders.

■ If the rule is, in fact, unconstitutionally vague as the appellant claims in her Point I, the deficiency would have been apparent to her from, at least, the time the respondent filed his application for *PDL* orders. As such, she should have raised the issue of the alleged vagueness of the rule with the trial court in her suggestions in opposition to the respondent's application or in her request for an oral hearing. Because the record reveals that she did not do so, she waived her claim that the rule was unconstitutionally vague as written. *Hollis,* 926 S.W.2d at 684.

Point denied.

## II.

In her Point II, the appellant claims that the trial court erred in entering its orders *PDL* for child support, attorney's fees, and costs without granting her an oral hearing and while proceeding under Local Rule 68.04, because it violated her right to due process of law in that she was deprived of her constitutionally protected property interest in her wages and other financial assets expended to satisfy the order, without an opportunity to be heard. We disagree.

■ "Generally, the taking of a property right without notice and an opportunity to be heard violates the due process clauses of the United States and Missouri Constitutions. *U.S. Const.* amend. XIV, § 1; *Mo. Const.* art. I, § 10." *Weber v. Firemen's Retirement Sys.,* 872 S.W.2d 477, 479 (Mo. *banc* 1994). However, the requirements of procedural due process apply only to the deprivation of interests encompassed by the constitutional protection of liberty and property, and the range of interests protected by procedural due process is not infinite. *Belton v. Board of Police Comm'rs,* 708 S.W.2d 131, 136 (Mo. *banc* 1986). Hence, a two-step analysis is required to determine whether the appellant, here, was denied her consti-

tutional right to procedural due process. *Id.*; *see also Clark v. Board of Dirs. of the Sch. Dist.,* 915 S.W.2d 766, 770–71 (Mo. App.1996). The first step is to determine whether she was deprived of a constitutionally protected interest. *Belton,* 708 S.W.2d at 136. The second is to determine whether the procedures followed in the case at bar were sufficient to satisfy constitutional due process requirements. *Id.*

As to a constitutionally protected interest, the appellant claims that, in ordering her to pay temporaries without an oral hearing, the trial court deprived her of her wages and other financial assets without due process. As such, she is contending necessarily that she has a constitutionally protected property interest in the same. The respondent contends that this interest was not constitutionally protected. He does not support his contention with any authority.

■ We believe that it is only logical that the appellant has a constitutionally protected property interest in her financial assets, including wages already earned. Furthermore, the Missouri Supreme Court has previously held that compensation from employment can be a constitutionally protected property interest. *Id.* at 137. Thus, we find that the appellant has a constitutionally protected interest in her financial assets, including wages earned, which she is required to expend in paying the temporaries ordered.

While not raised by the parties, as to whether the appellant has a constitutionally protected property interest, there is an issue of whether the trial court's orders *PDL* resulted in a "taking" of the appellant's wages and financial assets for purposes of due process. The issue arises from the fact that, although a *PDL* order is considered an independent judgment which stands on its own merits and is in no way dependent upon the merits of the issues in the underlying dissolution action, *Dardick v. Dardick,* 661 S.W.2d 538, 540 (Mo.App.1983), the effect of the order does

not extend beyond the final hearing and disposition of the case, *Stewart,* 866 S.W.2d at 156. In other words, the trial court's final judgment or decree of dissolution of marriage, as to issues of child support, attorney's fees, and costs, supersedes and terminates a trial court's *PDL* order. *Wakili,* 918 S.W.2d at 338.

The effect of an order *PDL* for child support is further affected by the fact that it may not result in a permanent taking of financial assets. This is so because the trial court can, pursuant to its final judgment of dissolution, award retroactive child support back to the time of the filing of the petition, which could have the effect of amending, in whole or in part, the order *PDL.* § 452.340; *In re Marriage of Kovach,* 873 S.W.2d 604, 607 (Mo.App.1993). The same can be said of *PDL* orders for attorney's fees and costs. § 452.355, RSMo 1994. Thus, the propriety of orders *PDL* for child support, attorney's fees and costs is, in effect, subject to review at the final dissolution hearing. And, because there has not been a final judgment of dissolution entered in the instant case, the question arises as to whether the appellant, as a result of the *PDL* orders of the trial court, has experienced a "taking" entitling her to due process protection.

In *Belton v. Board of Police Commissioners,* the Missouri Supreme Court addressed the issue of whether a five-day suspension of a police officer, as opposed to her termination, amounted to a constitutionally protected taking of a property interest. *Belton,* 708 S.W.2d at 135–36. In concluding that it did, the court stated:

> As long as a property deprivation is not *de minimus,* its gravity is irrelevant to a determination of whether due process should be afforded. *Goss v. Lopez,* 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). The length and consequent severity of a deprivation are considered in determining what procedural protections are constitutionally required, but not in determining whether the deprivation entitles appellant to due

process. Because appellant has been denied the emoluments of her office for the period of the suspension, the sanction imposed was more than *de minimus.*

*Id.* at 137. Here, given the fact that the trial court's *PDL* orders were, in effect, subject to review upon the entry of its final judgment of dissolution, at most, it subjected the appellant to the temporary deprivation of the use of her financial assets used to satisfy the *PDL* orders. Applying the standard laid down in *Belton,* we are unconvinced as to whether such a deprivation rises to the level of a constitutionally protected "taking." However, because we decide this appeal on another ground, we need not decide this issue.

■ Assuming, *arguendo,* that the appellant did suffer a taking of a constitutionally protected property interest entitling her to due process, we turn to the issue of whether the procedures used in the instant case were constitutionally sufficient to satisfy due process. As stated, *supra,* the fundamental requirement of due process is to provide notice and an opportunity to be heard to a person subjected to a denial of a protected interest. As to notice, there is no dispute that the appellant had notice of the respondent's application for *PDL* orders. Thus, the issue for us to decide is whether she was provided a sufficient opportunity to be heard.

■ To comply with procedural due process, the opportunity to be heard must come at a meaningful time and in a meaningful manner. *Larocca v. State Bd. of Registration for the Healing Arts,* 897 S.W.2d 37, 43 (Mo.App.1995) (*citing Moore v. Board of Educ.,* 836 S.W.2d 943, 947 (Mo. *banc* 1992)). In determining what process is due, three competing interests must be balanced: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of this interest through the procedures used and the probable value of additional safe-

guards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail. *Id.*

As to the first interest, the private interest affected, as discussed, *supra,* as a result of the *PDL* orders, the appellant faces, in effect, only a temporary deprivation of the financial assets expended to satisfy the orders. While this interest is not insignificant, it is certainly less significant than a permanent taking. Hence, we find that such an interest does not weigh heavily in favor of requiring an oral hearing on an order *PDL.*

■ We next address the second interest of whether a party could be erroneously deprived of a protected property interest if the trial court is allowed to enter orders *PDL* based solely on evidence presented in writing. Generally, to satisfy the requirements of due process, a party must be granted an opportunity to be heard at a time when the deprivation can still be prevented. *Moore v. City of Park Hills,* 924 S.W.2d 301, 303 (Mo.App.1996). However, this pre-deprivation opportunity to be heard does not have to be a formal judicial hearing. Pre-deprivation procedures, when coupled with adequate post-deprivation remedies, are sufficient where they provide " 'an initial check against mistaken decisions.' " *Belton,* 708 S.W.2d at 138 (*quoting Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494, 506 (1985)). Here, both the appellant and the respondent were allowed to file suggestions in support of or in opposition to the respondent's application for *PDL* orders, affidavits, and various court-approved forms providing extensive financial information concerning the relevant issues in determining temporary child support, attorney's fees and costs. Given the extensive nature of the information the parties submitted, the risk of erroneous deprivation here was very small.

■ With respect to the second interest, the appellant contends that as to *PDL* orders due process requires an oral hearing to allow the parties to present any additional evidence not presented in writing and to cross-examine witnesses, providing an opportunity for the trial court to assess their credibility. We disagree. The opportunity to "present reasons, either in person *or in writing,* why [a] proposed action should not be taken" is sufficient to satisfy due process. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (emphasis added). Given the fact that the propriety of the trial court's *PDL* orders are, in effect, subject to review at the final dissolution hearing, she fails to demonstrate what value additional process would have at this point in the proceeding. Thus, the second interest does not weigh in support of requiring a formal judicial hearing on *PDL* orders.

■ We next address the third interest, the government's interest in allowing *PDL* orders to be entered without an oral hearing and the burdens that would be imposed on the court system if such hearings were required. The purpose of *PDL* orders is to maintain the status quo during a dissolution proceeding. *Wakili,* 918 S.W.2d at 338. It goes without saying that the state has a significant interest in ensuring that: (1) children have adequate support during the pendency of a dissolution proceeding; and (2) the parties have sufficient funds to allow meaningful participation in the proceeding. As recognized in *Roedel v. Roedel,* 788 S.W.2d 788, 790–91 (Mo.App.1990) (*quoting Matthes v. Matthes,* 464 S.W.2d 754, 756 (Mo.App. 1971)):

> 'We are unable to see any good reason why a court in the exercise of its sound discretion, where factual circumstances warrant, should not be permitted to make a support award pending the divorce, effective as of the time [a spouse] files [his or] her motion for such support. The obligation to support exists while the marriage is in being, and the

purpose of an award pending the divorce is to provide the [spouse] the means to sustain [himself or] herself during the remainder of the marriage and to allow [him or] her to properly litigate the marital status. There is no reason why this right of necessary support should depend upon the condition of a court docket or the success of [his wife or] her husband in delaying a hearing. To so hold would place a premium on deliberate refusal of a [spouse] to provide necessary support and allow economic coercion detrimental to the [husband's or] wife's defense. Even relatively brief delays between filing of motion and hearing could have serious consequences on a [spouse] with no means.'

Both parties here acknowledge the congestion of the family court docket of the Sixteenth Judicial Circuit. To require a formal hearing on every application for a *PDL* order would only serve to increase the congestion of an already over-burdened court. As such, in order to ensure that applications for *PDL* orders are timely reviewed and granted when warranted, the state has a strong interest in continuing to allow trial courts to enter *PDL* orders on the written information submitted by the parties, without the necessity of a formal judicial hearing.

■ A balancing of the competing, relevant interests here leads us to the conclusion that the appellant received all the process which was constitutionally required in the trial court's entry of its *PDL* orders for child support, attorney's fees, and costs. As such, she was not denied her right to due process of law, and the trial court did not err in entering its *PDL* orders without granting her an oral hearing.

Point denied.

## III.

■ In her Point III, the appellant claims that the trial court erred in awarding temporary child support of $1,412 per month commencing April 1, 1998, because it misapplied the law in calculating the correct amount to award in that it used an improper version of Form 14. Specifically, the appellant claims that the trial court erred in using a version of Form 14 which was not in effect at the time the trial court entered its *PDL* order of support. We agree that the court erred.

[U]nder Rule 88.01 the trial court in all cases involving the award of child support is required to determine and find for the record the presumed correct child support amount calculated pursuant to Civil Procedure Form No. 14. The determination and finding of the amount can be done by either accepting for the record a Form 14 amount calculated by a party, or in the event it "rejects" the Form 14 amounts of the parties as being incorrect, doing its own Form 14 calculation.

*Woolridge v. Woolridge*, 915 S.W.2d 372, 381–82 (Mo.App.1996); *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. *banc* 1997).

■ In this case, there is no dispute that, in determining its award of temporary child support of $1,412 per month, the trial court accepted the Form 14 submitted by the respondent. There is also no dispute that the version of Form 14 used by the court was adopted by the Missouri Supreme Court on March 2, 1998, and was to go into effect on April 1, 1998. Unlike the prior version, this new version allowed the trial court to give the non-custodial parent a child support credit for the time that the child was in his or her physical custody overnight. However, on March 31, 1998, the supreme court issued an order vacating its previous order adopting the new Form 14, indicating that the prior version should continue to be used.[2] The

2. A new version of Form 14 became effective on October 1, 1998, by order of the Missouri Supreme Court.

trial court entered its *PDL* orders on April 28, 1998, awarding, *inter alia,* temporary child support of $1,412 per month commencing April 1, 1998, as calculated pursuant to the new version of Form 14 that was not in effect at that time.

Implicit in the required use of Form 14 in awarding child support is the trial court's use of the correct version of the form. The record here reveals that this did not occur. As a result, the trial court failed to make the required *Woolridge* Form 14 findings. Nonetheless, because we are able to determine from the record what the correct Form 14 calculation of the PCCSA should have been, using the version of the form that was in effect at the time the award was made, we need not reverse. *Woolridge,* 915 S.W.2d at 382. In this respect, the record reflects that the only difference between the PCCSA calculations using the prior and new versions of Form 14 resulted from the inclusion of the credit for temporary physical custody appearing on line 11 of the new version. Excluding this credit from the PCCSA calculations results in a Form 14 PCCSA of $1,285. Accordingly, we must reverse and remand as to the trial court's award of temporary child support of $1,412 per month commencing April 1, 1998, for it to enter its order for temporary child support of $1,285 per month, unless it determines pursuant to Rule 88.01 that it should be rebutted as being unjust and inappropriate. *Id.*

### IV.

In her Point IV, the appellant claims that the trial court erred in awarding temporary child support of $1,412 per month commencing April 1, 1998, because its finding as to the respondent's gross monthly income in the required calculation of the PCCSA, pursuant to Form 14, was against the weight of the evidence. Specifically, the appellant claims that the greater weight of the evidence indicated that the respondent's gross monthly income figure, used in calculating the PCCSA, should

have been in "excess of $6,349.85," not $3,000, as found by the trial court. We disagree.

The appellant bases her belief as to the respondent's correct gross monthly income on his income and expense statement, tax returns, and business records. With respect to this issue, the respondent admits that historically his gross monthly income had been higher than the $3,000 indicated on his income and expense statement. However, he asserts that the $3,000 per month was an accurate statement of his gross monthly income presently due to the loss of one of the primary clients of his accounting practice. As to his gross monthly income being greater because of an interest in rental property, he asserts that he did not realize any income therefrom. He also points out the fact that the trial court did use the higher gross monthly income figure of $3,975 per month to calculate the proper amount of retroactive temporary child support to award from March 1, 1997, to March 30, 1998, and only used the $3,000 figure to calculate the amount of support due from April 1, 1998.

■■■■ As noted, *supra,* we will reverse a trial court's judgment as to child support only if it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Epple,* 893 S.W.2d at 887. Further, we will view the evidence and the reasonable inferences drawn therefrom in a light most favorable to the prevailing party and will disregard all contrary evidence. *Ryder,* 795 S.W.2d at 412. And, we will defer to the trial court even if the evidence could support a different conclusion. *McKenna v. McKenna,* 928 S.W.2d 910, 911 (Mo.App.1996). The party challenging the trial court's decision has the burden of proving that the trial court erred. *Kiem v. Kiem,* 945 S.W.2d 603, 605 (Mo.App.1997).

■■■ In determining the respondent's gross monthly income for purposes of calculating the PCCSA, the trial court was

free to consider both his past and present earnings to determine an average that was consistent with historical earnings and representative of future earnings. *In re Marriage of Glueck,* 913 S.W.2d 951, 955 (Mo. App.1996). Likewise, the court, in its discretion, could have chosen to ignore his income history and look at his income from a single year, if it found that amount to be an accurate predictor of his income. *Samples v. Kouts,* 954 S.W.2d 593, 598 (Mo. App.1997). Alternatively, the trial court could have chosen to look to his future earning capacity to determine his ability to support the children in his custody. *Morris v. Morris,* 951 S.W.2d 739, 742 (Mo. App.1997).

▬ In the instant case, the court had before it both parties' written evidence as to the respondent's income from 1997 and his expected income in 1998. From its acceptance of the respondent's Form 14 and its award of temporary support, we conclude that it accepted, as true, the respondent's statement of his past and present earnings, which it was free to do. *McKenna,* 928 S.W.2d at 911. In this respect, the trial court looked to the respondent's income history in determining the correct amount of retroactive support to award, and looked to his future earnings in determining the amount of prospective support to award. The trial court was free to use either method in calculating his gross monthly income. *Glueck,* 913 S.W.2d at 955; *Morris,* 951 S.W.2d at 742. Because the trial court's determination of the respondent's income was within the range supported by the evidence, we cannot find that its determination was against the weight of the evidence. *Reed v. Reed,* 969 S.W.2d 287, 289 (Mo.App.1998).

Point denied.

## V.

In her Point V, the appellant claims that the trial court erred in ordering her to pay retroactive temporary child support of $14,056, calculated at $1,004 per month from March 1, 1997, to March 30, 1998, the date of the filing of the application. Specifically, she claims that the court erred in entering its order because: (1) temporary support can only be made retroactive to the date of the application or motion for an order *PDL,* and the respondent's application was filed on March 30, 1998; (2) the respondent did not have custody of the child for whom support was due, Seth, until March 18, 1997; and (3) it failed to award her credit against the award for amounts paid by her on behalf of the child in the respondent's custody. The respondent contends that, under Missouri law, an award of temporary child support can be made retroactive prior to the date of the filing of the application for the award and that the appellant was not entitled to the credits claimed.

We must first determine whether an order for temporary child support can be made retroactive to a date prior to the filing of the application or motion for temporaries. Although there seems to be some consensus among legal scholars in the field that retroactive temporary child support is permitted under § 452.315, our research does not disclose any Missouri cases that have actually decided the issue. Section 452.315 does authorize, *inter alia,* an award of temporary child support, but is silent as to whether it can be made retroactive. § 452.315.1. However, we believe that subsection 5 of the section does shed light on the issue of whether an award of temporary child support can be made retroactive. It provides that:

[o]n the basis of the showing made and in conformity with section 452.335 on maintenance and section 452.340 on support, the court may issue a temporary injunction and an order for temporary maintenance or support in such amounts and on such terms as are just and proper in the circumstances.

§ 452.315.5.

▬ In interpreting statutes, "[o]ur polestar is the intent of the legislature." *Centerre Bank v. Director of Revenue,* 744

S.W.2d 754, 759 (Mo. *banc* 1988). "When there is no ambiguity, the Court's authority is limited to applying the statute. Words used by the legislature have the meaning by which they are commonly understood unless otherwise defined in the law." *Garland v. Director of Revenue*, 961 S.W.2d 824, 827 (Mo. *banc* 1998). "Conformity" is not defined in § 452.315 and, as such, it is appropriate to turn to the dictionary for a definition. *City of St. Charles v. DeVault Management*, 959 S.W.2d 815, 824 (Mo.App.1997) (*citing Abrams v. Ohio Pacific Express*, 819 S.W.2d 338, 340 (Mo. *banc* 1991)). WEBSTER'S NEW WORLD COLLEGE DICTIONARY 293 (3ʳᵈ ed.1997) defines "conformity" as "action in accordance with customs, rules, prevailing opinion, etc." As such, we interpret § 452.315.5 as providing that an award of temporary child support may be made in accordance with the rules set forth in § 452.340.

Unlike § 452.335, RSMo 1994,[3] governing maintenance, which is silent on the issue of retroactivity, § 452.340.1, provides, in pertinent part, that the trial court may award child support "retroactive to the date of filing the petition." § 452.340.1. Hence, in conformity with the rule set forth in § 452.340 for the retroactivity of child support awards, we hold that the trial court here was authorized to award temporary child support retroactive to January 8, 1996, the date the petition was filed, which was prior to March 1, 1997, the date the trial court used to calculate retroactive support.

Having determined that the trial court was authorized by statute to make its award of temporary child support retroactive, we now turn to the issue of whether its award was justified under the facts and circumstances presented. In this respect, the appellant contends that the award back to March 1, 1997, was not justified because Seth was not in the respondent's actual physical custody until March 18, 1997. We disagree.

The decision to make an award of child support retroactive is within the sound discretion of the trial court. *Farr v. Cloninger*, 937 S.W.2d 760, 763 (Mo.App. 1997). As such, the trial court's determination of the effective date of the retroactive child support should not be disturbed absent an abuse of discretion. *Snell v. Snell*, 916 S.W.2d 414, 416 (Mo.App.1996). An abuse of discretion occurs only where the choice of effective date is clearly against the logic of the circumstances and is so arbitrary and capricious as to shock one's sense of justice and indicate a lack of careful consideration. *Porath v. McVey*, 884 S.W.2d 692, 697 (Mo.App.1994). In deciding whether to order retroactive child

---

3. We are not called upon to address the issue of retroactivity with regard to temporary maintenance awards. However, it is worth noting that, if the same rationale we use here were employed in deciding that issue, although the path of the analysis would be slightly changed, the result would be consistent with those cases that have already addressed the issue. As to the issue of retroactive maintenance, our appellate courts have held that, although both § 452.335, RSMo 1994, governing maintenance, and § 452.315, governing temporary maintenance, are silent with regard to retroactivity, *Roedel*, 788 S.W.2d at 790, *retroactive maintenance* was not allowed under § 452.335, RSMo 1994, but that *retroactive temporary maintenance* back to the time of the filing of the motion or application was allowed under § 452.315, the rationale being that a spouse should not waive or forfeit his or her right to mainte-nance simply because he or she could not obtain a hearing on and disposition of the motion or application prior to a final hearing on the petition and final decree. *Browning v. Browning*, 947 S.W.2d 106, 111–12 (Mo.App. 1997). (Contrary to all other cases addressing the issue of retroactive maintenance, we would point out that in *Stewart*, 866 S.W.2d at 158, the court stated that § 452.315.5 "allows a trial court to order retroactive maintenance," as opposed to retroactive temporary maintenance.) The rationale for restricting the retroactivity of an award of temporary maintenance to the date of filing of the application or motion, rather than the petition in the case of child support, is that an award of temporary maintenance to preserve the status quo is waived unless requested by the filing of an application or motion. *Id.*; *Roedel*, 788 S.W.2d at 791.

support, the trial court should consider all factors relevant to the issue and balance the equities as called for by the facts and circumstances of the particular case. *Farr*, 937 S.W.2d at 763.

In ordering temporary child support retroactive to March 1, 1997, it is clear that the trial court accepted the respondent's allegation that Seth had been in his custody since that time, which it was free to do. *McKenna*, 928 S.W.2d at 911. In reviewing the trial court's order, we view the evidence in the light most favorable to it and disregard all contrary evidence. *Ryder*, 795 S.W.2d at 412. As such, we find no error in the trial court's order of child support retroactive to March 1, 1997.

▌ The appellant also claims that the trial court's award of retroactive child support was erroneous because it failed to give her credit for payments made by her on behalf of Seth during the time for which she was ordered to pay retroactive support. In this respect, she claims that she provided Seth's medical insurance and paid his uninsured medical expenses, private school tuition for 1997, and car insurance through August 1997. Although the appellant correctly asserts that generally she would be entitled to credit against the retroactive award for any amounts voluntarily expended by her on behalf of Seth, *see Halupa v. Halupa*, 980 S.W.2d 325, 328 (Mo.App.1998), she did not indicate in her suggestions in opposition to the application for orders *PDL* the specific amounts she had expended. As such, we cannot convict the trial court of error in failing to give her credit against the retroactive child support award for such amounts.

Point denied.

## VI.

In her Point VI, the appellant claims that the trial court erred in awarding the respondent temporary attorney's fees of $5,000 and temporary costs of $2,500 because such an award was against the weight of the evidence in that the respon-dent had understated his income and had failed to establish the reasonableness of his request for fees and costs. We disagree.

▌ A trial court has broad discretion in determining whether to award attorney's fees and costs. *Crotty v. Kline*, 947 S.W.2d 121, 124 (Mo.App.1997). The award will not be disturbed on appeal absent an abuse of discretion. *Id.* To show an abuse of discretion, the party challenging the award must show that the trial court's ruling was clearly against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

▌ Generally, Missouri courts adhere to the "American rule" with regard to awards of attorney's fees and costs which provides that each litigant should bear his or her own expenses. *Crews v. Crews*, 949 S.W.2d 659, 671 (Mo.App.1997) (*citing Harris v. Desisto*, 932 S.W.2d 435, 448 (Mo.App.1996)). However, a trial court may order one party to pay the other's attorney's fees and costs where such is authorized by statute. *Id.* In a dissolution action, the trial court is authorized to award temporary attorney's fees and costs pursuant to § 452.355, RSMo 1994.

▌ The trial court is considered to be an expert in the necessity and reasonableness of attorney's fees as well as in the determination of the value of the services rendered. *Hembree–Shanaberger v. Shanaberger*, 903 S.W.2d 202, 205 (Mo.App.1995). In determining whether to award attorney's fees, the court may consider all relevant factors including the financial resources available to each party and each party's ability to bear their own expenses. *Crotty*, 947 S.W.2d at 124.

In challenging the trial court's award of temporary attorney's fees and costs, the appellant first argues that the respondent understated his income and thereby failed to demonstrate that he was unable to pay his own attorney's fees and costs. This argument is without merit in that in our

discussion of Point IV, *supra,* we found that the trial court's finding as to the respondent's gross monthly income was supported by the evidence. As such, the trial court did not err in using this figure to determine whether the respondent was capable of paying his own attorney's fees and costs.

The appellant also argues that the trial court erred in awarding the respondent temporary attorney's fees and costs because he offered no supporting evidence to establish the reasonableness of his request. In making this argument, the appellant relies on *Tepper v. Tepper,* 763 S.W.2d 726 (Mo.App.1989). In *Tepper,* the court held that an award of attorney's fees must be supported by competent and substantial evidence. *Id.* at 726. Because the party seeking fees and costs did not present any evidence to support the amount of fees requested, the court remanded the case for a determination of the proper amount of attorney's fees and costs to award. *Id.* at 726.

 Although the respondent, as the appellant points out, did not indicate in his required forms, which were filed with the trial court pursuant to Local Rule 68.04, the hourly rate of his attorney, he did state that he was requesting an award of attorney's fees in the amount of $5,000 to prosecute the dissolution action and costs of $2,500 to secure an appraisal of his business. Given this and the fact that both the appellant and the respondent presented substantial evidence as to their respective incomes and expenses, we believe the trial court had sufficient evidence from which to determine the respondent's ability to pay and his need with respect to his attorney's fees and costs.

For the reasons stated, we find that the trial court did not abuse its discretion and err in awarding the respondent $5,000 in temporary attorney's fees and $2,500 in temporary costs.

Point denied.

## Conclusion

The *PDL* orders of the circuit court awarding the respondent temporary child support retroactive to March 1, 1998, in the amount of $14,056; temporary attorney's fees of $5,000; and temporary costs of $2,500 is affirmed. The *PDL* order of the circuit court awarding the respondent child support in the amount of $1,412 per month, commencing April 1, 1998, is reversed, and the cause is remanded to the trial court for a determination of the correct amount of child support in accordance with this opinion.

All concur.