STATE of Missouri, ex rel., Jeremiah
W. NIXON, Attorney General, State
of Missouri, Respondent,

v.

Johnathan P. OVERMYER, Appellant.

No. WD 65808.

Missouri Court of Appeals,
Western District.

May 2, 2006.

Appellant Acting Pro Se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Paul Harper, Asst. Attorney General, Jefferson City, MO joins on the briefs, for Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

PER CURIAM.

This is an appeal from the grant of a Motion for Summary Judgment in a Missouri Incarceration Reimbursement Act

("MIRA") action. Johnathan Overmyer appeals the trial court's grant of summary judgment in favor of the State. We affirm.

## Procedural and Factual Background

Johnathan Overmyer is currently serving a ten-year sentence for sodomy in the first degree. He was sentenced on August 23, 2004. Two months after he commenced serving his sentence, on October 7, 2004, the State of Missouri, at the relation of the Attorney General, filed a petition against Overmyer for reimbursement under the Missouri Incarceration Reimbursement Act ("MIRA"), sections 217.825 [1] through 217.841. On October 12, 2004, the trial court issued an *ex parte* order freezing Overmyer's assets pending the outcome of the suit and setting a show cause hearing for January 24, 2005. The order also appointed Rodney Kueffer, inmate treasurer for the State of Missouri, receiver for Overmyer's funds.

Overmyer filed a Motion to Dismiss on January 18, 2005, claiming that the court lacked personal jurisdiction, that the complaint failed to state a claim upon which relief may be granted, and that the action must be dismissed because the State is unable to collect ten percent of the amount sought as required under section 217.831.3. He filed his response to the order to show cause on the same day. His response included a disclosure of assets listing a house valued at $40,000, a truck valued at $2,500, and an account at Mid–Missouri Bank valued at $3,395.92.

Max and Floradell Barham requested and were granted leave on January 24, 2005, to intervene in the proceedings. The Barhams were the previous owners of the property Overmyer claimed as his homestead in his response. The Barhams sold the property to Overmyer on August 6, 2003, in exchange for a promissory note in the amount of $41,000, which was apparently secured by a lien against the property. The Barhams were given thirty days to file their answer, and it was filed on February 4, 2005.

On January 27, 2005, attorney Ralph W. Gilchrist entered his appearance on behalf of Overmyer by filing a Claim of Homestead Allowance in order to exempt the home.

On February 2, 2005, the State Treasurer certified the costs of Overmyer's incarceration from August 26, 2004, through February 28, 2005, at $7,402.56.

Overmyer filed additional motions on February 17, 2005. These motions were filed *pro se*. Mr. Gilchrist, who had appeared in Overmyer's behalf in January, had not withdrawn. The motions filed *pro se* included a Motion to Dissolve *Ex Parte* Order Appointing Receiver and a Motion to Set Aside Order Granting Intervention. Both motions included memoranda in support.

The State filed a Motion for Summary Judgment. Overmyer did not file a response to the motion.

The trial court granted the Motion for Summary Judgment and entered judgment against Overmyer. The court found that the State had already expended an amount of $7,402.56 for Overmyer's incarceration and future amounts are unknown but will be determined by a Treasurer's certificate of costs. The court granted Overmyer's request for homestead exemption for his real estate. Overmyer appeals.

---

1. All statutory references are to the Revised Statutes of Missouri, 2000, unless otherwise indicated.

## Standard of Review

On an appeal from summary judgment, the appellate court's review is "essentially de novo." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The issue of whether summary judgment was properly granted is an issue of law. *Id.* Because the trial court's judgment is based solely on the record submitted and the law, we do not defer to the trial court's judgment in our review. *Id.* We review the record in the light most favorable to the party against whom judgment was entered. *Id.* The court examines whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II Sch. Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994).

## Analysis

Overmyer raises six points on appeal. First, the trial court erred in permitting the Barhams to intervene. Second, the trial court erred in exercising *in personam* jurisdiction because of inadequate service of process. Third, the trial court erred in entering an indefinite and uncertain judgment. Fourth, the trial court erred in denying Overmyer's Motion to Dissolve *Ex Parte* Order Appointing Receiver because the order violated his due process rights. Fifth, the trial court erred in granting the motion for summary judgment because the State failed to allege that the money in the bank account was not savings from wages and bonuses paid while in confinement. Finally, the trial court erred in not applying the exemptions found in Chapter 513 in addition to the exemptions found in MIRA. For the sake of clarity, we will discuss the points out of order.

## Service of Process (Point II)

▆ Overmyer's second point states that the trial court erred in exercising *in personam* jurisdiction over him because of inadequate service of process. When a statute provides for a method of service of process, service by either that method or a method provided in the Rules is adequate. Mo. R. Civ. P. 54.18. MIRA sets forth a method for service in section 217.835.2:

> Upon the filing of the complaint under subsection 1 of this section, the court shall issue an order to show cause why the prayer of the complainant should not be granted. The complaint and order shall be served upon the person personally, or, if the person is confined in a state correctional center, by registered mail addressed to the person in care of the chief administrator of the state correctional center where the person is housed, at least thirty days before the date of hearing on the complaint and order.

▆ We determine whether service of process was adequate through statutory interpretation. "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland*, 155 S.W.3d 65, 67 (Mo. banc 2005) (*citing Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 251 (Mo. banc 2003)). "Statutory construction should not be hyper technical but instead should be reasonable, logical, and should give meaning to the statutes." *Id.*

Section 217.835.2 states that service of process via registered mail is adequate service. In this case, service was made upon Overmyer by registered mail addressed to him at the Fulton Reception and Diagnostic Center. The mail was addressed to Overmyer and sent more than thirty days before the show cause hearing. This satisfies the requirements of the statute for adequate service of process. Point denied.

### Dissolution of Receiver (Point IV)

■ Overmyer's fourth point states that the trial court erred in denying Overmyer's Motion to Dissolve *Ex Parte* Order Appointing Receiver because the order violated his due process rights. MIRA sets forth the authority for the trial court to appoint a receiver for the assets of a prisoner. Section 217.837 states:

1. Except as provided in subsection 3 of this section, the attorney general may use any remedy, interim order, or enforcement procedure allowed by law or court rule including an ex parte restraining order to restrain the prisoner or any other person or legal entity in possession or having custody of the estate of the prisoner from disposing of certain property in avoidance of an order issued pursuant to the provisions of section 217.835.

2. To protect and maintain assets pending resolution of proceedings initiated pursuant to the provisions of section 217.835, the court, upon request, may appoint a receiver.

\* \* \*

With the authority set forth in section 217.837, the Attorney General in this case requested the appointment of a receiver by the trial court in his petition. The court granted the request. Overmyer did not challenge the original appointment of the receiver, the initial freezing of his assets, or notice of the action. Overmyer was required to raise the constitutional issue at the first available opportunity to avoid waiving it. *United C.O.D. v. State,* 150 S.W.3d 311, 313 (Mo. banc 2004). Overmyer failed to raise the due process issue in his first filing on January 18, 2005.

■ In any event, the appointment of a receiver does not violate the constitutional requirements for due process. In examining whether or not the appointment of a receiver is a violation, a two-step analysis is required. *Laubinger v. Laubinger,* 5 S.W.3d 166, 174 (Mo.App.1999) (*citing Belton v. Bd. of Police Comm'rs,* 708 S.W.2d 131, 136 (Mo. banc 1986)). The first step determines whether he was deprived of a constitutionally protected interest. *Id.* The second step determines whether the procedures followed in the case at bar were sufficient to satisfy constitutional due process requirements. *Id.*

■ In this case there is no dispute that Overmyer was deprived of assets. The question is whether the proper procedures were followed to satisfy the constitutional due process requirements. Those procedures require notice and an opportunity to be heard. *Id.* at 175. Overmyer was provided with notice of the appointment of the receiver when the petition was filed. He was then provided with an opportunity to be heard when the trial court, on October 12, 2004, ordered a show cause hearing for January 24, 2005. The opportunity to provide written reasons as to why the receiver should not be appointed satisfies the necessary due process requirements. *Id.* at 176 (*citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). The trial court properly denied the Motion to Dissolve *Ex Parte* Order Appointing Receiver filed on February 17, 2005. This point fails.

### No Dispute of Material Fact (Point V)

■ Overmyer's fifth point states that the trial court erred in granting the motion for summary judgment because the State failed to allege that the money in the bank account was not savings from wages and bonuses paid while in confinement. Overmyer failed to respond to the State's motion for summary judgment. Now he argues that there is a genuine issue of material fact as to when he received the money in the account. He also argues that the reason he did not reply to the

motion for summary judgment was because of a mistaken belief by the court and State that he was represented by counsel when he was proceeding *pro se.*

When reviewing a motion for summary judgment, the "[f]acts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. In this case, the facts set forth in the motion for summary judgment by the State were not contradicted. The State asserted in its motion, attested by affidavit, that the funds in Overmyer's account were there when the account was opened at the time his incarceration began. Overmyer failed to file a response to the motion for summary judgment. Overmyer "should be aware that a failure to respond to a motion for summary judgment with specific facts showing genuine material issues may have adverse consequences. The failure to respond results in an admission of the facts alleged." *Collins v. Feldman,* 991 S.W.2d 718, 719 (Mo.App.1999).

As a result of Overmyer's failure to respond, the facts alleged in the motion for summary judgment established a *prima facie* case for the State that was not rebutted. The motion for summary judgment and attached documents showed that Overmyer was an offender incarcerated in a state correctional facility and that he has assets that may be used for incarceration reimbursement. Those assets were shown to be in Overmyer's account upon his entering the correctional facility. Therefore, they were not monies earned while incarcerated. As there was no material fact in dispute, summary judgment was properly entered.

Overmyer asserts that the reason he did not reply to the motion for summary judgment was because he was not provided with a copy of the motion. Overmyer states that although Mr. Gilchrist entered his appearance on Overmyer's behalf, Mr. Gilchrist was never employed by Overmyer.

The entry of appearance by an attorney is itself presumptive evidence of his or her authority to represent the person for whom he or she appears. The presumption is rebuttable, but the appearance of an attorney for one of the parties is generally deemed sufficient proof of his or her authority for the opposite party and for the court.

7 AM.JUR.2D *Attorneys at Law* § 160, p. 203 (1997); *see State ex rel. A.M.T. v. Weinstein,* 411 S.W.2d 267, 272 (Mo.App. 1967). Overmyer failed to overcome the presumption that Gilchrist represented him. As a result, Overmyer's assertion that he was not provided with a copy of the motion will not avail. Gilchrist, who was constituted his agent, received the motion. Receipt by Gilchrist constituted receipt by Overmyer. We presume Gilchrist notified Overmyer of the motion. If Overmyer disputes that, any complaint should be directed to Mr. Gilchrist.

### Application of Exemptions (Point VI)

Overmyer's sixth point states that the trial court erred in failing to apply the exemptions found in Chapter 513 (dealing with executions on judgments) in addition to the exemptions found in MIRA. He argues that the trial court should have applied the exemptions in sections 513.430.1(3) and 513.440 that would have exempted $1,850 in his bank account.

The exemptions in Chapter 513 do not apply to MIRA actions. "When the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general." *Lane v. Lensmeyer,* 158 S.W.3d 218, 225 (Mo. banc 2005). This theory applies "where two

statutes governing the same issue are in conflict and cannot be harmonized." *Id.; see also Greenbriar Hills Country Club v. Dir. of Revenue* 47 S.W.3d 346, 360 (Mo. banc 2001) (*Greenbriar Hills III* ), (Wolff, J., dissenting) ("[w]hen the statute that deals with the subject in a more definite way is later in time than the more general statute, the later, more specific statute is regarded as a qualification or exception to the prior general statute").

The exemption provisions of MIRA (section 217.827(1)(b)) and Chapter 513 (sections 513.425–513.530) are in direct conflict. MIRA provides a method for collection of the MIRA judgment, including placing "priority over all other liens, debts, or other incumbrances." § 217.837.4.

Chapter 513 provides for the execution of judgments in general rather than any particular judgments. *See* § 513.015. MIRA specifically provides for collecting the judgment and specifies the exemptions from collection.

MIRA is a more specific statute because it has a more specific purpose. The exemptions in Chapter 513 include motor vehicles, tools and books of trade, household furnishings, clothes, and jewelry. § 513.430. These are exemptions that protect basic personal items and also allow an individual to continue their livelihood regardless of the judgment. MIRA, on the other hand, provides exemptions only for the homestead and up to $2,500 earned while in prison. § 217.827(1)(b). When a MIRA action is filed, the individual's livelihood has already been stripped, as he or she is incarcerated. By including only the two exemptions in MIRA, one of which is also provided in Chapter 513, the legislature specifically excluded any exemptions other than those they listed.

One case, *State ex. rel Nixon v. Mahmud,* 11 S.W.3d 718 (Mo.App.1999), involved the possible applicability of the Chapter 513 exemptions in MIRA actions. The court did not specifically address whether Chapter 513 exemptions were generally applicable in MIRA cases. Instead, this court differentiated between the terms "paid" and "payable," finding that the particular statutory language precluded application of the exemptions in that case. *Id.* at 720–21. The court did not specifically decide that Chapter 513 exemptions do not apply in MIRA actions, because doing so was unnecessary in that case in view of the statutory language.

Section 217.827(1) sets forth a very broad definition of "assets," including tangible and intangible, real and personal, and including income and payments from any source; and then states the exclusions from "assets":

(b) "Assets" shall not include:

a. The homestead of the offender up to fifty thousand dollars in value;

b. Money saved by the offender from wages and bonuses up to two thousand five hundred dollars paid the offender while he or she was confined to a state correctional center[.]

The statute expresses a legislative intent to be all-encompassing as to prisoner assets except for the two specific exceptions mentioned. In sum, the exceptions in MIRA are more specific to MIRA actions. Thus, by implication, the Chapter 513 exemptions do not apply in MIRA actions. Point denied.

### Judgment Indefinite (Point III)

Overmyer's third point states that the trial court erred in entering an indefinite and uncertain judgment. He argues that the judgment does not identify specific assets or the amount of indebtedness and does not award a specific dollar amount.

This court in *State ex. rel. Nixon v. Jones,* 108 S.W.3d 187, 192 (Mo.App.

2003), stated, while addressing the *res judicata* issues of pursuing reimbursement in multiple actions, that:

> [t]he attorney general may file a complaint ... against any person under the jurisdiction of the department [of corrections] stating that the person is or has been an offender in a state correctional center, that there is good cause to believe that the person has assets, and *praying that the assets be used to reimburse the state for the expenses incurred or to be incurred, or both,* by the state for the cost of care of the person as an offender.

The State is required to request any reimbursement for future expenses related to incarceration in its first MIRA action. *Id.* at 193. If the State fails to request future expenses in the original action, it is barred from doing so in a future action. *Id.*

In this case, the State properly requested reimbursement for expenses incurred and those that will occur. The incurred expenses were shown with a Treasurer's Certificate. The same will be required of future expenses. This is what the statute requires, and the judgment is not indefinite as the expenses are capped by the cost and duration of incarceration. Further, the assets were described in the judgment. The point is denied.

### Intervention by the Barhams (Point I)

■ Overmyer's first point states that the trial court erred in permitting the Barhams to intervene. He fails to assert any prejudice to his rights, and we fail to see any since the interest of the Barhams corresponded with Overmyer's: protection of Overmyer's interest in the real estate.

The Barhams were entitled under Rule 52.12(a) to intervene. If their interest was not represented, their interest could have been impaired because a judgment under MIRA has priority over all other liens, debts, or other incumbrances on a prisoner's assets. § 217.837.4.

At the same time, Overmyer fails to show how the trial court's order granting intervention prejudiced Overmyer in any way. Therefore, whether or not the order of intervention was proper, Overmyer has no standing to complain. Point denied.

### Conclusion

The judgment of the trial court is affirmed.