CITY OF KANSAS CITY, Missouri,
Respondent,

v.

CHUNG HOE KU, et al., Appellant;

Randall Landes, Respondent.

No. WD 69807.

Missouri Court of Appeals,
Western District.

Feb. 17, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 31, 2009.

Application for Transfer Denied
May 26, 2009.

Rhonda E. Smiley, Kansas City, MO, for appellant.

Theodore T. Anderson, Kansas City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J., HAROLD L. LOWENSTEIN and JAMES M. SMART, JJ.

JOSEPH P. DANDURAND, Judge.

Chung Ho Ku and Myong Suk Ku ("the Kus") appeal the judgment of the Circuit Court of Jackson County condemning real estate owned by the Kus. The trial court ruled in favor of the City of Kansas City, Missouri ("the City"). The Kus argue four points on appeal. They claim the trial court erred in entering a judgment of condemnation because: (1) there was no substantial evidence that the City engaged in good faith negotiations before filing a condemnation suit; (2) there was neither substantial evidence nor a factual finding by the court that the City complied with statutory time limitations in adopting the city ordinance authorizing condemnation; (3) there was no substantial evidence to support a legislative determination of blight and the blight determination was arbitrary, capricious, and induced by fraud, collusion or bad faith; and (4) the judgment was barred by the doctrines of res judicata and collateral estoppel. The points are denied, and the judgment is affirmed.

### Background

Chung Ho Ku and Myong Suk Ku own a property (the Ku Property) commonly known as 1219–21 Grand Avenue in Kansas City, Missouri. The Ku Property is located near the Power & Light Entertainment District, Sprint Center, and H & R Block World Headquarters in downtown Kansas City.

On January 14, 2004, the Tax Increment Financing Commission of Kansas City ("the TIFC") adopted a resolution recommending that the City Council of Kansas City ("the City Council") approve the 1200 Main/South Loop Tax Increment Financing Plan ("the Redevelopment Plan").

In March 2004, the City Council enacted an ordinance approving and adopting the TIFC's recommendation regarding the Redevelopment Plan. The ordinance designated certain real estate as part of a Redevelopment Area pursuant to the Real Property Tax Increment Allocation Redevelopment Act ("the TIF Act"). § 99.820.1(1).[1]

In October 2004, the TIFC adopted a resolution recommending that the City Council approve a Second Amendment to the Redevelopment Plan. The Second Amendment expanded the boundaries of the Redevelopment Area to include, among other properties, the Ku Property. The City Council enacted such an ordinance, and the TIFC filed a petition in condemnation seeking to acquire the Ku Property. The circuit court dismissed the TIFC's condemnation petition ("*Ku I*") without prejudice, noting that pursuant to Section 99.820.1(3), property may not be condemned through the use of eminent domain unless such property is part of a redevelopment project. The circuit court noted that the TIFC admitted the Ku Property was not then part of such a project.

On November 9, 2005, the TIFC adopted a resolution recommending that the City Council approve a Fourth Amendment to the Redevelopment Plan. The Fourth Amendment expanded the boundaries of the Redevelopment Area and also provided for a mixed use redevelopment project, which was proposed by a private developer, 112 Redevelopers, LLC. The redevelopment project is to be located on numerous properties in the area, including the Ku Property.

---

1. All statutory references are to Revised Statutes of Missouri (RSMo) 2000 unless otherwise noted.

On May 11, 2006, the City Council, through its enactment of Ordinance No. 051532, approved the Fourth Amendment to the Redevelopment Plan. In the ordinance the City Council determined, among other things, that the Redevelopment Area as a whole was blighted. In making such a determination, the City Council had before it multiple blight studies.

Pursuant to statute, the City sent written notice by certified mail to each owner of record of the affected properties, which were all within the boundaries of the redevelopment project in the Redevelopment Area. The notice informed the property owners of the City's intended acquisition. By certified mail notice dated September 10, 2007, the City offered to pay the Kus $390,500 to purchase the Ku Property. Attached to the City's written offer to purchase was a copy of an appraisal done by Ed Severeid, which valued the property at $390,500. Mr. Severeid is a licensed appraiser in the State of Missouri. The Kus rejected the City's offer and made a counteroffer of $2,000,000.

On October 4, 2007, the City Council enacted Committee Substitute for Ordinance No. 070923 ("ordinance substitute") authorizing the City Attorney to file a condemnation petition to acquire the properties in the Redevelopment Area, including the Ku Property. In the ordinance substitute, the City Council found and determined continued redevelopment of the area and the reduction or elimination of blight to be a public use. The City Council declared it a public necessity to condemn and acquire fee simple title to the affected property. The City filed its petition in condemnation on November 6, 2007, and its amended petition on February 22, 2008. The case was set for trial on March 17, 2008.

At trial, in addition to arguing that the Ku Property was not blighted, the Kus also argued that the City did not lawfully engage in good faith negotiations because its offer of $390,500 was based on an appraisal that the Kus claimed was not performed in accordance with the standards set by the legislature for state-certified appraisers. The Kus' expert, Maurice Kancel, a state-certified appraiser, valued the Ku Property at $1,200,000. Mr. Kancel testified that he performed an appraisal review of Mr. Severeid's appraisal in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP"). Mr. Kancel found that Mr. Severeid's appraisal did not meet six out of the twenty standard USPAP requirements, and he further testified that he did not agree with Mr. Severeid's analysis.

Mr. Ferguson, the City's Right of Way Agent, testified on behalf of the City. In addition to being a state-certified appraiser, Mr. Ferguson has been responsible for the acquisition of properties in downtown Kansas City for several redevelopment projects. He also signed the City's offer to purchase the Ku Property on behalf of the City. Mr. Ferguson noted that Mr. Severeid's appraisal was done in accordance with generally accepted appraisal practices. He also testified that Mr. Severeid discussed the three standard approaches to appraising property—the cost approach, the capitalization of income approach, and the comparative market approach—before selecting the comparative market approach as the most appropriate method to value the Ku Property. Mr. Ferguson stated that he approved of Mr. Severeid's methodology.

The trial court found that the Redevelopment Plan and its amendments were prepared in accordance with the TIF Act and that the City had complied with all conditions precedent to this condemnation action. Accordingly, the trial court found

in favor of the City and ordered the Ku Property condemned.

This appeal followed.

## Standard of Review

"This Court examines the record to determine whether there is substantial evidence to support the legislative decision." *Centene Plaza Redevelopment Corp. v. Mint Prop.*, 225 S.W.3d 431, 433 (Mo. banc 2007).

## Point I

■ In their first point on appeal, the Kus contend that the trial court erred in entering a judgment of condemnation because there was no substantial evidence that the City engaged in good faith negotiations before filing the condemnation suit. The Kus argue that the City's appraiser did not comply with required USPAP standards in making his appraisal of the Ku Property, and thus the City, in basing its offer on the appraisal, did not make a good faith offer to purchase the Ku Property.

"Before a court may enter an order of condemnation, the court shall find that the condemning authority engaged in good faith negotiations prior to filing the condemnation petition." § 523.256. A condemning authority is deemed to have engaged in good faith negotiations if:

(1) It has properly and timely given all notices to owners required by this chapter;

(2) Its offer under section 523.253 was no lower than the amount reflected in an appraisal performed by a state-licensed or state-certified appraiser for the condemning authority, provided an appraisal is given to the owner pursuant to subsection 2 of section 523.253 or, in other cases, the offer is no lower than the amount provided in the basis for its determination of the value of the property as

provided to the owner under subsection 2 of section 523.253;

(3) The owner has been given an opportunity to obtain his or her own appraisal from a state-licensed or state-certified appraiser of his or her choice; and

(4) Where applicable, it has considered an alternate location suggested by the owner under section 523.265.

*Id.*

The Kus argue that the City's appraisal, which was conducted by Mr. Severeid, was not USPAP–compliant and, therefore, not in good faith. To support their argument, the Kus rely on Section 339.535, which states that "[s]tate certified real estate appraisers and state licensed real estate appraisers *shall comply with the Uniform Standards of Professional Appraisal Practice.*" (Emphasis added.) Relying on their appraiser's trial testimony, the Kus argue that "[t]he City's offer matched the appraisal value, but the appraisal was anything but of standard quality or USPAP–compliant." At trial, the Kus' appraiser, Mr. Kancel, testified that the techniques and methodology used by Mr. Severeid were valid. Mr. Kancel further testified, however, that it was his belief that the data and analysis upon which Mr. Severeid relied was inaccurate and/or insufficient. Mr. Kancel also testified to the ways in which he thought Mr. Severeid's appraisal was not USPAP–compliant.

Section 523.253.2(2), which deals specifically with condemnation proceedings, states, "Any appraisal referred to in this section shall be made by a state-licensed or state-certified appraiser using *generally accepted appraisal practices.*" (Emphasis added.) The Kus, however, rely on Section 339.535 in arguing that an appraiser must adhere to USPAP. The Kus contend that when read together, Sections 523.253

and 339.535 indicate that any appraisal made by a state-licensed or state-certified appraiser must be in compliance with US-PAP.

■ Where two statutes addressing the same subject matter are in conflict and cannot be harmonized, the more specific statute controls over the more general statute. *See State ex rel. Nixon v. Overmyer*, 189 S.W.3d 711, 717–18 (Mo.App. W.D.2006). The statute on which the Kus rely, Section 339.535, deals generally with real estate appraisers. Section 523.253, however, deals specifically with condemnation proceedings. Section 523.253 is the more specific statute, and it controls. Accordingly, an appraiser in a condemnation proceeding must adhere to generally accepted appraisal practices—such an appraiser is not required to adhere to US-PAP.

There was sufficient evidence from which the trial court could find that the City's appraiser used generally accepted appraisal practices in appraising the Ku Property. Mr. Ferguson testified at trial that Mr. Severeid's appraisal was done in accordance with generally accepted appraisal practices. He noted that Mr. Severeid discussed the three standard approaches to appraising property before selecting an approach to use in valuing the Ku Property. Mr. Ferguson further testified that he approved of Mr. Severeid's methodology and did not notice anything that would cause him to believe Mr. Severeid's appraisal did not comply with USPAP. Even if Section 339.535 does require that the condemning authority's appraisal comply with USPAP, there was substantial evidence before the court that Mr. Severeid's appraisal *did* so comply. The trial court did not err in determining that the City engaged in good faith negotiations before filing its condemnation suit. Point one is denied.

## Point II

■ In their second point on appeal, the Kus argue that the trial court erred in entering a judgment of condemnation because there was neither substantial evidence nor a factual finding by the trial court that the City complied with statutory time limitations in enacting the city ordinance authorizing condemnation. In support of their argument, the Kus cite Section 99.820.1(1):

1. A municipality may:

(1) By ordinance introduced in the governing body of the municipality within fourteen to ninety days from the completion of the hearing required in section 99.825, approve redevelopment plans and redevelopment projects, and designate redevelopment project areas pursuant to the notice and hearing requirements of sections 99.800 to 99.865 . . . .

The Kus admit that the Redevelopment Plan was adopted by ordinance within fourteen to ninety days of the completion of the TIFC hearings and therefore complies with Section 99.820.1(1). The Kus argue, however, that the trial court made no factual finding that the Fourth Amendment to the Redevelopment Plan, which provided for a redevelopment project and determined that the Ku Property was blighted, was adopted by ordinance within the ninety-day time limit. The Kus contend that the Fourth Amendment was not adopted by ordinance within the ninety-day limitation and therefore was not in statutory compliance.

■ The Kus raise this issue for the first time on appeal. "Issues raised for the first time on appeal are not preserved for review." *Vinson v. Vinson*, 243 S.W.3d 418, 423 (Mo.App. E.D.2007)(quotation marks and citation omitted). The Kus direct this court to Supreme Court Rule

84.13(a), which states in part that "[a]part from questions of jurisdiction of the trial court over the subject matter," claims of error not presented to or decided by the trial court shall not be considered on appeal. The Kus assert that the trial court lacked jurisdiction to condemn the property because it did not find the City complied with the time limit set forth in Section 99.820.1(1). Thus, the Kus argue that the issue is properly appealable. Their assertion is incorrect.

■ If the Kus had a legitimate claim that the City had not complied with the statutory time limit, it was incumbent upon the Kus to raise the issue at trial, either giving the City the opportunity to present evidence showing compliance or giving the trial court the opportunity to make a specific finding of fact on the issue. "Under Rule 73.01, a party is required to specify the controverted fact issues on which it is seeking findings and, if not requested, all fact issues are found in accordance with the judgment." *Timmons v. Timmons,* 132 S.W.3d 906, 918 (Mo.App. W.D.2004). Neither the City nor the Kus requested specific findings of fact as to *any* issue at trial. "The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party." Rule 73.01(c). Absent a request by the City or the Kus, the trial court was not required to make any findings of fact on the issue now being contested. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

■■ Even under a plain error review, the Kus are not successful. Supreme Court Rule 84.13(c) states, "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injus-

tice or miscarriage of justice has resulted therefrom." In the case before this court, no such injustice occurred. There can be no plain error when the trial court was not requested to make any findings nor given the opportunity to address this issue. Moreover, an ordinance is assumed to have been adopted in the manner required by law unless there is proof to the contrary. *See Friends of the City Market v. Old Town Redevelopment Corp.,* 714 S.W.2d 569, 575 (Mo.App. W.D.1986). Accordingly, it is reasonable to assume the trial court found all legal conditions precedent to the condemnation met and satisfied when the judgment and order of condemnation was entered.

Point two is denied.

### Point III

■ In their third point on appeal, the Kus claim the trial court erred in entering a judgment of condemnation because there was no substantial evidence to support a legislative determination of blight and that the blight determination was arbitrary, capricious, and induced by fraud, collusion, or bad faith.

The Kus argue that the City Council, in making its determination of blight, was required to find the Ku Property a social liability as well as an economic liability. Because the City Council did not do so, the Kus argue that the blight determination and, therefore, the subsequent condemnation are invalid. The Kus rely on the definition of blight set forth in *Centene Plaza Redevelopment Corp. v. Mint Props.,* 225 S.W.3d 431, 433 (Mo. banc 2007). In *Centene,* the definition of blight is set forth as "those portions of the city that by reason of age, obsolescence, inadequate or outmoded design or physical deterioration have become economic *and* social liabilities, and that such conditions are conducive to ill health, transmission of dis-

ease, crime or inability to pay reasonable taxes...." *Id.* (quotation marks omitted)(emphasis added in original). The *Centene* court relied on a definition of blight set forth in Section 353.020 under Urban Redevelopment Corporations Law.

Under the TIF Act, however, a blighted area is defined as:

an area which, by reason of the predominance of defective or inadequate street layout, unsanitary or unsafe conditions, deterioration of site improvements, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire or other causes, or any combination of such factors, retards the provision of housing accommodations or constitutes an economic *or* social liability....

§ 99.805(1)(emphasis added). The Kus, relying on the Chapter 353 definition of blight, argue that the City failed to show the Ku Property was an economic *and* social liability. Their argument fails, however, because under the TIF Act's definition of blight, the condemnor must prove only economic *or* social liability. The TIF Act "is a more specific statute because it has a more specific purpose." *Overmyer,* 189 S.W.3d at 718. Section 99.805(1) is the more specific statute, and its definition of blight must be used. *Id.* at 717.

The City Council, in making its determination of blight, had before it four blight studies, admitted into evidence at trial as Exhibits 6, 7, 8, and 18.[2] Those studies extensively examined the property contained in the Redevelopment Area, including the Ku Property. Exhibit 6, Volume I of a 2003 blight study, contained numerous photographs of property in the Redevelopment Area as well as analysis of the area and whether it satisfied the definition of blight set forth in Section 99.805(1). The

study's conclusions noted that "[m]uch of the project area suffers from a dramatic decline in physical condition caused by lack of use over the past few years, coupled with damage caused by transients, vandals and weather." The study found that 75 percent of the tax parcels exhibited severe to moderate blight in terms of age, and 91 percent exhibited at least moderate obsolescence. It also noted that 80 percent of the tax parcels exhibited significant deterioration and that most of the properties "exhibiting age or deterioration of improvements have moderate to severe sanitary or safety blight considerations." The study further noted that the deteriorated properties within the Redevelopment Area adversely affected the surrounding buildings, resulting in the overall area being blighted.

Exhibit 7, Volume II of the 2003 blight study, contained individual tax parcel analyses of sixty-one parcels of land within the Redevelopment Area, including the Ku Property. For each property, the study considered ten blight factors: (1) Inadequate Street Layout; (2) Insanitary/Unsafe Conditions; (3) Deterioration of Improvements; (4) Improper Subdivision/Platting; (5) Endanger Life or Property; (6) Retards Housing; (7) Economic/Social Liability; (8) Health/Safety/Morals/Welfare; (9) Conclusion; and (10) Previous Blight Finding. In the Ku Property analysis, blight was found under Factor 4 and moderate blight was found under Factors 1, 3, 7, and 9.

Exhibit 8, a 2005 blight study, did not specifically examine the Ku Property. It did, however, analyze nearby property included in the Redevelopment Area. The study found that the dominant features of

---

**2.** Although the trial transcript refers to the blight studies as Exhibits 6, 7, 8, and 10, the blight studies were actually introduced into evidence as Exhibits 6, 7, 8, and 18.

the area included "significant physical deterioration and functional obsolescence, insanitary and unsafe conditions, and extended and excessive vacancy." The study concluded that 40 percent of the area was extensively blighted and that 37 percent of the area was moderately blighted.

The City Council also had before it Exhibit 18, a 2005 blight study encompassing the Ku Property. The study found many examples of insanitary or unsafe conditions in the area, including illegal dumping of trash, broken building materials, and deteriorated pavement. In addition to its finding that the area was blighted, the study also noted that "absent redevelopment, there is every reason to believe the insanitary and unsafe conditions will continue."

Nevertheless, the Kus argue that the City Council did not individually consider each parcel of property in the Redevelopment Area before making its determination of blight, thus violating Section 523.274.1. In making this assertion, the Kus rely on Section 523.274.1, which requires that "the condemning authority shall individually consider each parcel of property in the defined area with regard to whether the property meets the relevant statutory definition of blight." *Id.* The Kus, however, ignore Volume II of the 2003 blight study, which contained an individual analysis of the Ku Property and found the Ku Property to be blighted. The City Council considered this evidence when making its blight determination and did not violate Section 523.274.1. Moreover, Section 523.274.1 also states, "If the condemning authority finds a *preponderance of the defined redevelopment area* is blighted, it may proceed with the condemnation of *any* parcels in such area." *Id.* (emphasis added). In Ordinance No. 051532, in which the City Council approved the Fourth Amendment to the Redevelopment Plan, the City Council legislatively

found and determined that "The Redevelopment Area *as a whole* is a blighted area." (Emphasis added.) The trial court heard evidence regarding the City's condemnation proceeding and found that the "City Council has individually considered each parcel of property in the Redevelopment Area with regard to whether the property meets the relevant statutory definition of blight, and has found that a preponderance of the Redevelopment Area is blighted, as required by § 523.274, R.S.Mo."

In support of their argument that the City's blight determination was arbitrary, capricious, and induced by fraud, collusion, or bad faith, the Kus merely argue:

The TIFC, [private developers] and the City in combination and without and/or before following the requirements set forth by including, *inter alia,* RSMo 523.253, 523.256, 523.261, and 523.274 set about to effect an exchange of property the City/TIFC wanted for the [Redevelopment] Plan and [the private developers] wanted for "economic development." . . . . Their collusive actions were fraudulent, arbitrary, in bad faith and were precisely the actions prohibited by § 523.261 RSMo, requiring a conclusion that the trial court lacked jurisdiction to condemn these Subject Properties.

■ That is the extent of the Kus argument. Although not properly set forth in the Argument portion of the Kus' brief, the Kus assert that the TIFC entered into a purchase and sale agreement in which a private developer would obtain the Ku Property. The trial court found that the agreement "provides no support for [the Kus'] claim of fraud or collusion." The trial court concluded that the agreement was irrelevant and unrelated to any issue before the trial court. Even if the trial court had found the Kus' argument rele-

vant, the Kus would still not prevail. Collusion is defined as "an agreement between two or more persons to defraud another under the forms of law, or to accomplish an illegal purpose." *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 400 (Mo.App. E.D.2007)(quotation marks and citation omitted). The Kus have failed to allege or offer any evidence of how such an agreement is illegal or fraudulent.

There was sufficient evidence to support the trial court's conclusion that the City Council's findings were made using reasonable methods and that the City Council's determination of blight was valid. Point three is denied.

### Point IV

In their fourth point on appeal, the Kus contend the trial court erred in entering a judgment of condemnation because the judgment was barred by the doctrines of res judicata and collateral estoppel. In support of their argument, the Kus state that "[a]ll issues raised were decided against TIFC" in *Ku I*—the dismissed petition. They argue that the circuit court's dismissal of the first petition that condemned the Ku Property, *Ku I*, was a final judgment granting in full the Kus's motion to dismiss.

The doctrine of res judicata, or claim preclusion, "prevents a party from relitigating facts or questions that have been settled by judgment on the merits in a previous action." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 612 (Mo. banc 2006). To invoke res judicata, "a final judgment on the merits must have been rendered involving the same claim or issue sought to be precluded in the cause in question." *Lomax v. Sewell*, 50 S.W.3d 804, 809 (Mo.App. W.D.2001)(quotation marks and citation omitted). Collateral estoppel, or issue pre-

clusion, "precludes relitigation of an issue previously decided and incorporated into an earlier judgment." *Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 273 (Mo. banc 2004). "The doctrine requires that the issue was fully and fairly litigated, that the issue was essential to the earlier judgment, and that the earlier judgment be final and binding on the party against whom it is asserted." *Id.*

The Kus' argument fails for at least two reasons. First, in *Ku I*, the circuit court ordered a dismissal without prejudice. Rule 67.01 states, "A dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred." In *Ku I*, the issue was whether property that was not yet part of a redevelopment project could be condemned. The circuit court dismissed the City's condemnation petition prior to a hearing on the merits. Here, the issue is whether property that is now part of a redevelopment project may be condemned. In support of their argument, the Kus assert that "TIFC did not appeal the dismissal without prejudice or timely refile." They further assert that "[a]ll issues raised [in *Ku I*] were decided against TIFC" and that "[t]he only difference in *Ku I* and this case is there is now a Redevelopment Project. The existence of a project does not cure the other defects." The Kus offer no evidence nor make any assertion of what those "defects" may be. Although both *Ku I* and the case *sub judice* involve the Ku Property, the Kus do not establish the necessary requirements for a successful res judicata or collateral estoppel argument.

The Kus' argument fails for a second reason—the circuit court made only one finding in its order of dismissal in *Ku I*. In its order of dismissal, the circuit court wrote:

The Court finds that, pursuant to R.S.Mo. 99.820.1(3), property may not be condemned through the use of eminent domain unless such property is part of a redevelopment project.... As [City] admits that [Kus's] property is not part of any redevelopment project, [City's] Petition for Condemnation is hereby DISMISSED without prejudice."

The Kus assert that the circuit court "granted in full the Supplemental Motion to Dismiss." The Kus apparently contend that because their motion was granted, the motion was granted for *all* of the reasons alleged in their motion. Their contention is incorrect. The circuit court dismissed *Ku I* because it specifically found that, *at that time,* the Ku Property was not part of a redevelopment project. There were no other judicial determinations made by the circuit court in *Ku I*. In the case *sub judice,* the trial court found that the Ku Property, which was incorporated into the Redevelopment Area by the Second Amendment to the Redevelopment Plan, *was* made part of a specific redevelopment project through the Fourth Amendment to the Redevelopment Plan. The trial court concluded that this remedied the defect that caused the condemnation petition in *Ku I* to be dismissed. The trial court further concluded that the circuit court in *Ku I* made no findings other than that the petition was dismissed because the Ku Property was not yet part of a redevelopment project.

Point four is denied.

## Conclusion

The trial court found that the City engaged in good faith negotiations, that the City Council individually considered each parcel of property in the Redevelopment Area as to whether the property meets the statutory definition of blight, that the City Council's findings of blight were supported by substantial evidence consisting of the numerous blight studies before the TIFC and the City Council, and that there was substantial evidence to support the City Council's determination that acquisition of the Ku Property was for a public purpose. It also concluded that the Kus failed to present any evidence to support their claim that the City Council's findings of blight were arbitrary, capricious, or induced by fraud, collusion, or bad faith and that the Kus's claim of res judicata or collateral estoppel was also without merit.

There was substantial evidence before the trial court to support the City Council's determinations regarding the Ku Property. The trial court did not err in entering the judgment of condemnation. Accordingly, the judgment of the trial court is affirmed.

All concur.