**STATE of Missouri ex rel Chris KOSTER, Missouri Attorney General, Respondent,**

v.

**Lloyde COWIN, Appellant.**

**No. WD 75059.**

Missouri Court of Appeals, Western District.

Jan. 15, 2013.

Michael Shipley, Liberty, MO, for Appellant.

Denise Gabel, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., JOSEPH M. ELLIS, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Lloyde Cowin appeals from the trial court's judgment in favor of the State on its petition seeking reimbursement for the cost of his incarceration pursuant to the Missouri Incarceration Reimbursement Act (MIRA), sections 217.825 to 217.841.[1] We reverse and remand.

## Factual and Procedural Background

In 1973, Mr. Cowin was sentenced to serve three life sentences for three first-degree murder convictions. In March 2011, the State filed a petition pursuant to MIRA, seeking to recover costs of Mr. Cowin's care during his incarceration. The State alleged that as of the date of the petition, it had incurred more than $38,000 in costs for Mr. Cowin's care and that it may continue to incur costs during the entire period Mr. Cowin is incarcerated. With its petition the State filed, *inter alia,* a letter from a Mr. Jason Cowin indicating he had been "established as the new agent for [Mr. Cowin's] power of attorney" after the death of a Mr. Doyle Cowin, and had received $16,025.68 belonging to Mr. Cowin, which was placed in a bank account. The trial court issued a show cause order and appointed a receiver to hold Mr. Cowin's assets.[2]

In March 2012, the case was tried on the parties' stipulated facts. The parties agreed that Mr. Cowin had $16,025.08 in assets in a bank account controlled by Mr. Jason Cowin, and that the State had incurred $60,305.82 in costs for Mr. Cowin's incarceration from November 6, 2008 through February 15, 2012.

The trial court entered judgment in favor of the State for the costs of Mr. Cowin's incarceration "past, present, and future." Its judgment stated that the State would be required to evidence future costs in accord with section 217.841.2, that such evidence would be filed with the court, that Mr. Cowin was required to pay the funds in his bank account to the State after allowing for attorney's fees and costs of the proceedings, and ordered that ninety percent of all future deposits received in Mr. Cowin's inmate account, excepting wages and bonuses, would be paid to the MIRA Revolving Fund. It further ordered that it would retain jurisdiction over the action "for the purposes of determining future reimbursement amounts." Mr. Cowin appeals.

## Standard of Review

We will affirm a court-tried case unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously applies or declares the law. *State ex rel. Nixon v. Jordan,* 258 S.W.3d 529, 531 (Mo.App. W.D.2008). Where, as here, the case was tried on stipulated facts, the only issue for our review is "whether the trial court drew the proper legal conclusions from those facts." *Id.*

---

1. Statutory references are to RSMo 2000 unless otherwise indicated.

2. A judgment was entered in June 2011, but was subsequently vacated on Mr. Cowin's request after counsel pleaded good cause for its failure to enter appearance.

### Legal Analysis

In his sole point on appeal, Mr. Cowin argues the trial court erred in its order against him because MIRA does not authorize a general judgment. He contends that section 217.835 permits the State to recover only those assets that an inmate "has" at the time of the MIRA hearing and that thus the "[c]ourt's authority is limited to applying existing assets to incarceration costs."

■ MIRA was enacted to provide a means for the State to be reimbursed "for the cost of caring for and maintaining prisoners in the Missouri Department of Corrections." *State ex rel. Nixon v. Jones,* 108 S.W.3d 187, 188 n. 1 (Mo.App. W.D. 2003) (internal quotation marks and citation omitted). It permits the Attorney General to seek reimbursement from offenders by filing a petition in circuit court if having good cause to believe that the action will yield an amount of recovery specified in the statute. *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 83 (Mo. banc 2008); *see also Jordan,* 258 S.W.3d at 531. The good cause requirement is to ensure that the Attorney General's reimbursement actions are cost-effective by permitting the filing of the petition only "if there is an expectation of reasonable return." *Id.*

■ Subsection 217.835.1 provides in relevant part that:

The attorney general may file a complaint ... against any person under the jurisdiction of the department stating that the person is or has been an offender in a state correctional center, that there is good cause to believe that the person *has assets,* and praying that the assets be used to reimburse the state for the expenses incurred or to be incurred, or both, by the state for the cost of care of the person as an offender.

(emphasis added). Subsection 217.835.3 states that:

At the time of the hearing on the complaint and order, if it appears that the person *has any assets* which ought to be subjected to the claim of the state pursuant to the provisions of sections 217.825 to 217.841, the court shall issue an order requiring any person, corporation, or other legal entity possessed or having custody *of such assets, to appropriate and apply such assets or a portion thereof* to satisfy such claim.

(emphasis added). Mr. Cowin argues that the language "has any assets" precludes the State from seeking to recover future monies the inmate acquires because the plain language limits the State's recovery to the inmate's assets in existence at the time of the hearing. We agree.

"Assets" are defined in subsection 217.827(1) as:

property, tangible or intangible, real or personal, *belonging to or due an offender* or a former offender, including income or payments to such offender from Social Security, workers' compensation, veterans' compensation, pension benefits, previously earned salary or wages, bonuses, annuities, retirement benefits, or from any other source whatsoever, including any of the following:

a. *Money or other tangible assets received* by the offender as a result of a settlement of a claim against the state, any agency thereof, or any claim against an employee or independent contractor arising from and in the scope of said employee's or contractor's official duties on behalf of the state or any agency thereof;

b. *A money judgment received* by the offender from the state as a result of a civil action in which the state, an agency thereof or any state employee or independent contractor where such judg-

ment arose from a claim arising from the conduct of official duties on behalf of the state by said employee or subcontractor or for any agency of the state;

c. A *current stream of income* from any source whatsoever, including a salary, wages, disability, retirement, pension, insurance or annuity benefits or similar payments;[3]

(emphasis added).

■■ Our role in statutory construction is to determine the legislature's intent "from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *State ex rel. Nixon v. Overmyer*, 189 S.W.3d 711, 715 (Mo.App. W.D.2006). MIRA's plain language does not authorize a judgment against the inmate for property to which the inmate does not have a present legal right. "[H]as any assets" within subsection 217.833.3 is plainly set in the present, not future, tense. The legislature did not state, "has *or will have* any assets." "Assets" as defined by the legislature includes property "belonging to or due an offender," but the definition does not suggest that "assets" includes property rights the inmate has not yet acquired. § 217.827(1). Thus, "assets" includes species of monies and judgments "received by" the inmate, but does not include speculative amounts or unidentified expectations of receipt. § 217.827(1)(a). "Assets" includes "[a] *current* stream of income" because the inmate has a presently existing right to those payments, but the definition provided by the legislature does not include a stream of income that an inmate begins to receive in the future. § 217.827(1)(a)(c). While money or property not yet in the inmate's possession may be subject to MIRA recovery, MIRA permits this attachment only when a legal

right to those assets can be identified at the time of hearing. Thus, recovery may be against those assets "due to" an offender or represented by a "current stream of income"—such as, for example, a mandatory trust distribution. Here, however, the trial court's judgment orders recovery from assets not identified and not in existence at the time of hearing.

The State asserts that to disallow it from obtaining a judgment against assets the inmate might acquire in the future is "irreconcilable" with *Jones*. In *Jones*, we determined that MIRA requires the State to seek its future costs of care during a single action or those claims would be barred by *res judicata*. 108 S.W.3d at 192. In *Jones*, the State brought a MIRA petition and received judgment for past costs incurred. *Id.* at 189. The State then brought a second MIRA petition and received a second judgment for costs incurred from the date of the first judgment through the date of the second trial. *Id.* We focused specifically on the language in section 217.835.1, which authorizes the attorney general to seek reimbursement for expenses incurred "or to be incurred." *Id.* at 192. We found that "MIRA expressly and unequivocally authorizes the State to pursue future *expenses* in an action filed under MIRA" and reasoned that the legislature made a determination to "conserve judicial resources and protect the inmate and the State from the cost and vexation of multiple suits under MIRA." *Id.* at 192, 192 n. 6 (emphasis added). We thus determined that the State's second petition was barred by *res judicata* because the State could have sought its future costs in its first petition, and *res judicata* bars raising issues which could have been litigated in a prior action. *Id.* at 192–93.

---

**3.** Subsection 217.827(1)(b) excludes the offender's homestead, up to fifty thousand dollars in value, and up to twenty-five hundred dollars of inmate wages and bonuses.

Contrary to the State's argument, Jones is not "irreconcilable" with Mr. Cowin's argument. In *Jones*, we were required to follow the plain language of the statute, just as we are in the instant case. *Jones* found that MIRA required the State to seek its future costs because the statute plainly requires the State to pray for its *"expenses incurred or to be incurred." Id.* at 192–93 (quoting § 217.835.1). *Jones* did not read MIRA to authorize the State to receive judgment against assets to which the inmate did not have present possession or present legal right. In fact, in *Jones* we specifically noted that "MIRA restricts the State's recovery against an inmate to ninety percent of his assets *at the time of adjudication." Id.* at 192, n. 6 (emphasis added).

The State also argues Mr. Cowin's interpretation is contrary to *Overmyer.* In *Overmyer,* we reviewed an inmate's claims after the trial court awarded the State's past costs and found that the State's "future amounts are unknown but will be determined by a Treasurer's certificate of costs." 189 S.W.3d at 714. There the inmate argued that the judgment was indefinite and uncertain because it did not identify specific assets from which reimbursement would be sought or the amount that would be awarded. *Id.* at 718. We rejected his claim, relying on *Jones,* and finding that the assets were described in the judgment and that the amount to be reimbursed was not indefinite because "the expenses are capped by the cost and duration of incarceration." *Id.* at 719. *Overmyer* does not contradict MIRA's plain language. In accord with *Jones,* it found that the State could be awarded its future *costs* and stated simply that the "the assets were described in the judgment." *Id.*

The State also cites *State ex rel. Nixon v. Bowers* for support. *See* 259 S.W.3d 594 (Mo.App. W.D.2008). In *Bowers,* the trial court granted summary judgment for the State on its reimbursement claim and awarded the State both monies presently existing in the inmate's account and deposits to be made to that account in the future. *Id.* at 595. We determined, again by the statute's plain language, that "MIRA contemplates and authorizes the attachment of funds that have not been collected but *are due to the offender.* Thus, assets to be collected in the future are eligible for attachment." *Id.* at 596–97 (emphasis added). *Bowers* does not aid the State, as *Bowers* dealt with a presently existing property right to funds *due to* the inmate, not. unidentified, nonexistent assets. Properties "due to an offender" are expressly "assets" under subsection 217.827(1)(a). In fact, the primary issue in *Bowers* was whether the inmate raised a factual issue as to whether payments being made into his account were payments due to him, and thus a "current stream of income," or whether the payments he had been receiving were gifts, and thus monies to which he had no entitlement. *Id.* at 596; *see Foster v. State,* 352 S.W.3d 357, 361 n. 5 (Mo. banc 2011) (stating that the "prospect of a future gift does not constitute an asset because the offender is not entitled to it and it is not in the offender's account, as required by MIRA."); *State ex rel. Nixon v. Hughes,* 281 S.W.3d 902, 910 (Mo.App. W.D.2009).

The State further argues that Mr. Cowin's interpretation of the statute would "place an absurd burden on the State" because it is required to seek its current and future costs, but cannot receive a judgment against the inmate's future assets in the same action. We cannot engraft language onto a statute that was not provided by the legislature. *Turner v. School Dist. of Clayton,* 318 S.W.3d 660, 668 (Mo. banc 2010). The statute's plain language does not give the trial court au-

thority to order the inmate to reimburse the State from assets unidentified and unknown at the time of hearing, but rather it requires that reimbursement is to be from presently identifiable assets. We are "obligated to enforce the law as duly enacted by the legislature," and to recognize that policy decisions are the province of the legislature. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 456 (Mo. banc 2011). It is not our role to "question the wisdom, social desirability or economic policy underlying a statute as these are matters for the legislature's determination." *Batek v. Curators of Univ. of Mo.*, 920 S.W.2d 895, 899 (Mo. banc 1996). Mr. Cowin's sole point is granted.

## Conclusion

For the foregoing reasons, the trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

ELLIS and WITT, JJ. concur.

